# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099

Tel: 212 728 8000
Fax: 212 728 8111

January 16, 2015

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   Pre-Motion Conference in *F5 Capital v. Pappas et al.*, No. 1:14-cv-09356-AT

Dear Judge Torres:

On behalf of Defendant Monarch Alternative Capital LP ("MAC"), as well as Defendants Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, and P Monarch Recovery Ltd. (collectively, the "Monarch Funds," and with MAC, "Monarch"), and pursuant to Section III.A of the Court's Individual Rules of Practice in Civil Cases ("Individual Rules"), we respectfully submit this letter to request a pre-motion conference prior to filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  Undersigned counsel respectfully request that Your Honor schedule the pre-motion conference for February 5, 2015 at 4:15 p.m., to take place at the same time as the already-scheduled initial pretrial conference.

In addition to the grounds set forth in a separate letter joined by all defendants, which is also being submitted to the Court today, Monarch anticipates making a separate motion based on the following grounds.  Monarch sent Plaintiff F5 Capital ("F5") a letter disclosing these grounds pursuant to Individual Rules III.A and III.B on January 5, 2014, and F5 responded on January 12.

## BACKGROUND

This is a purported shareholder derivative and class action by F5 arising from three sets of transactions entered into by Star Bulk Carriers Corporation ("Star Bulk"), a global shipping company. Star Bulk is incorporated in the Marshall Islands and publicly traded on the Nasdaq Stock Market.  The transactions at issue in this case include:

1.   In 2014, Star Bulk acquired two other shipping companies, Oceanbulk Shipping LLC and Oceanbulk Carriers LLC (collectively, "Oceanbulk"), in the so-called "Oceanbulk Merger."  Compl. ¶¶ 2, 53.

    2.    Also in 2014, Star Bulk acquired 34 drybulk vessels from another shipping company, Excel Maritime Carriers Ltd. ("Excel"), in the so-called "Excel Transaction."  Compl. ¶¶ 2, 97.

    3.    The Complaint refers to certain "service contracts" between Star Bulk and unnamed counterparties (the "Service Contracts").  Compl. ¶¶ 105-107.

The gravamen of the Complaint is that Star Bulk overpaid for these three transactions.  *See* Compl. ¶ 2.  F5 also alleges that the transactions constituted self-dealing with respect to certain defendants, but not Monarch.  *Id.*  F5 asserts various claims based on these allegations, including among others a claim for breach of fiduciary duty against the director defendants, and a claim for aiding and abetting that breach of fiduciary duty against the other defendants, including Monarch.

Monarch is apparently included in F5's Complaint because (a) the Monarch Funds entered into a voting agreement (the "Voting Agreement") in support of the Oceanbulk Merger, and (b) Monarch allegedly has other business dealings with some of the defendants outside of Star Bulk.  *See, e.g.*, Compl. ¶¶ 72-73.  But F5 does not allege (apart from conclusory statements that are untethered to specific facts) that Monarch received from the transactions any special benefit that was not shared equally by all other disinterested shareholders, or that Monarch's interests are not aligned with other disinterested stockholders.  Nor can F5 make such an allegation.  This is a crucial substantive gap in F5's pleadings that, as explained below, requires dismissal of F5's claim against Monarch for aiding and abetting an alleged breach of fiduciary duty by the director defendants.

## APPLICABLE LAW

Marshall Islands law, as the law of the place of Star Bulk's incorporation, governs this case.  *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 128 (S.D.N.Y. 1999) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)).  Marshall Islands law, in turn, applies Delaware law.  *See* Marshall Islands Business Corporation Act § 13 ("Insofar as it does not conflict with any other provision of this Act, the non-statutory law of the State of Delaware and those of other states with substantially similar legislative provisions is hereby declared to be and is hereby adopted as the law of the Republic . . . .").

## GROUNDS FOR MOTION TO DISMISS
## CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

The Court should dismiss F5's Second Cause of Action against Monarch for aiding and abetting the breach of fiduciary duty alleged in F5's First Cause of Action.[1]  To start, F5 has not

---

[1]    Undersigned counsel also represents Individual Defendant Roger Schmitz.  Mr. Schmitz is omitted from F5's Second Cause of Action.  F5's First Cause of Action for breach of fiduciary duty is against the "Individual Defendants," including Mr. Schmitz.  F5's Second Cause of Action for aiding and abetting that breach of fiduciary duty is against "All *Other* Defendants."

adequately pleaded a claim for breach of fiduciary duty, which also requires dismissal of the aiding and abetting claim.

Even if F5 had sufficiently pled a claim for breach of fiduciary duty against certain directors, F5 has not satisfied its pleading burden with respect to the aiding and abetting claim.  To do so, F5 must allege—in a non-conclusory manner—that Monarch engaged in "knowing participation in the breach."  *E.g.*, *Lee v. Pincus*, 2014 WL 6066108, at *13-14 (Del. Ch. Nov. 14, 2014) (dismissing claim for aiding and abetting breach of fiduciary duty while denying motion to dismiss antecedent claim for breach of fiduciary duty); *In re Telecom., Inc.*, 2003 WL 21543427, at *2-3 (Del. Ch. July 7, 2003) (same).  "The alleged aider and abetter . . . must act with scienter."  *Lee*, 2014 WL 6066108, at *13.

To satisfy its burden, F5 must allege that Monarch knew that "the terms of the transaction [at issue] are so egregious or the magnitude of side deals is so excessive as to be *inherently wrongful*."  *Id.* at *13 (emphasis added); *In re Telecom.*, 2003 WL 21543427, at *3.  "This has also been stated as requiring the plaintiff to allege that the act taken by the fiduciary was *per se* illegal."  *In re General Motors (Hughes) Shareholder Litig.*, 2005 WL 1089021, at *24 (Del. Ch. May 4, 2005), *aff'd*, 897 A.2d 162 (Del. 2006).  Of course, no aspect of any of the transactions at issue here was "inherently wrongful" or "*per se* illegal," and F5 does not and cannot allege otherwise.

F5 attempts to satisfy its pleading burden as to scienter by dubbing the transactions at issue "grossly inadequate" and by invoking "unfair price[s]."  *E.g.*, Compl. ¶ 2.  Such verbiage is insufficient to infer scienter on the part of non-director defendants like Monarch.  For example, the Delaware Chancery Court has dismissed aiding and abetting claims against non-director defendants despite open questions whether the transaction at issue "was not entirely fair."  *Lee*, 2014 WL 6066108, at *13-14.  "Even if Plaintiff were able to show the Director Defendants breached their fiduciary duties, . . . [a] court can infer a non-fiduciary's knowing participation only if a fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff alleges specific facts from which that court could reasonably infer knowledge of the breach."  *Nebenzahl v. Miller*, 1996 WL 494913, at *7 (Del. Ch. Aug. 29, 1996).

F5's attempts to allege side deals involving Monarch in an attempt to plead scienter also fail.  To address each transaction in turn, F5 alleges nothing about Monarch in relation to the Service Contracts, so no aiding and abetting claim can arise from them.  As to the Excel Transaction, F5 states that a Star Bulk subsidiary entered into a credit agreement with "entities affiliated with the Pappas Defendants, the Oaktree Investors, *and/or* the Monarch Investors."  Compl. ¶ 103 (emphasis added).  This clever bit of obfuscation cannot mask the fact that the Complaint does not allege that Monarch (or any of its affiliates) is even a lender under the referenced credit agreement, or that Monarch had any other role in the Excel Transaction.  Indeed, the SEC Form 6-K (including its exhibits) cited by F5's

---

(Emphasis added.)  If F5 attempts to include Mr. Schmitz in its Second Cause of Action, Mr. Schmitz will join in Monarch's motion to dismiss.

Complaint (Compl. ¶ 103 & n.1) omits any mention of Monarch as well as Oaktree OBC Holdings LLC and Oaktree Dry Bulk Holdings LLC.[2] Any suggestion to the contrary is entirely speculative and cannot pass muster under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As to the Oceanbulk Merger, F5 points out that Monarch entered a Voting Agreement to support that transaction and states that "[p]resumably, Monarch would only assent in advance to the Voting Agreement for some economic consideration from its counterparties." *See, e.g.*, Compl. ¶ 74. But speculative and conclusory allegations like this one are insufficient to satisfy F5's pleading burden. *See, e.g.*, *Twombly*, 550 U.S. at 555. F5's claim, which it reiterated in its letter to us, that "as a direct result of the Oceanbulk Merger, the Monarch Investors, Oaktree Investors, and the Pappas Defendants and their affiliated entities have increased their *combined* ownership of the outstanding shares of Star Bulk" (Compl. ¶ 3) (emphasis added) is another attempt at sleight of hand—there is no allegation that *Monarch's* ownership interest in Star Bulk increased as a result of the Oceanbulk Transaction. To the contrary, the Complaint admits that the "Monarch-related entities owned 21% of Star Bulk shares prior to the Merger and 7.4% after." Compl. ¶ 65. Furthermore, the Complaint makes no specific Oceanbulk transaction allegations at all as to Oaktree Value Opportunities Fund, L.P., Oaktree Opportunities Fund Delaware, L.P., or Oaktree Opportunties Fund IX (Parallel 2) L.P. Accordingly, F5's aiding and abetting claim should be dismissed as to them to the extent it is based on the Oceanbulk transaction.

Even if F5 could allege—in a non-conclusory, non-speculative manner—some economic consideration to Monarch for entering the Voting Agreement, Delaware courts have long held that simply acting in one's economic interest cannot give rise to an aiding and abetting claim. *See Malpiede v. Townson*, 780 A.2d 1075, 1097-98 (Del. 2001). Indeed, absent a non-conclusory allegation that Monarch received some "unreasonable [benefit] for the services performed . . . , there is no well-pled basis to infer that [Monarch] extracted unreasonable compensation or any form of improper 'side deal' for consenting to" an agreement that advanced the overall transaction. *Lee*, 2014 WL 6066108, at *14 (citing *Malpiede*, 780 A.2d at 1098).

F5 next alleges that Monarch has business relationships with other defendants outside of Star Bulk. Compl. ¶ 75. These allegations likewise cannot satisfy F5's pleading burden. F5 does not allege, for example, that Monarch stands to gain any benefit or enjoy any *quid pro quo* in these other businesses thanks to Monarch's support of the Oceanbulk Merger. Delaware law will not infer "inherently wrongful" "side deals," *see Lee*, 2014 WL 6066108, at *13-14, simply because parties have an outside business relationship. Indeed, this question often arises in the context of directors' conflicts, where Delaware law is clear that "a mere outside business relationship" between two parties is insufficient to impugn the parties' "independent business judgment." *See Beam ex rel. Martha*

---

[2] On a motion to dismiss a court may "consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Genna v. Sallie Mae, Inc.*, 2012 WL 1339482, at *2 (S.D.N.Y. Apr. 17, 2012) (court's alterations omitted) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).

*Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049-50 (Del. 2004) (affirming dismissal of derivative claim for failure to make a demand on the board).  By contrast, we are aware of no case in which an improper side deal could be inferred against a non-director defendant simply because that defendant had an outside business relationship with another defendant, and F5 identified no such authority in its letter to us.  Instead, F5 characterized its Complaint as alleging "a tangled web of longstanding relationships" that were "not merely unrelated, inconsequential, or intermittent."  F5 provided no authority to support its apparent argument that the length or structure of business relationships has any relevance to these matters absent specific allegations of actual improper side deals.

Because F5 cannot satisfy the "stringent" standard of pleading scienter as to Monarch, its aiding and abetting claim against Monarch should be dismissed.  *See Lee*, 2014 WL 6066108, at *13.

### MONARCH ALTERNATIVE CAPITAL LP AS A DEFENDANT

Separately, MAC is named as a defendant in the body of the Complaint.  Compl. ¶ 34.  But MAC is not named as a party in the title of F5's Complaint, which implies that this entity is *not* supposed to be a party to this action.  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").  Indeed, the docket indicates that MAC, unlike other Monarch entities, was never even served.  We are, however, mindful of the Court's policy of "liberally grant[ing] the plaintiff leave to amend" to correct clerical errors.  Individual Rule III.B.i.  MAC will not oppose a motion by F5 to add MAC to the caption of the Complaint, without prejudice to any rights, remedies, or defenses that MAC or any other Monarch defendant may have.

As to the substantive allegations, MAC was never a stockholder of Star Bulk and was not a party to any of the agreements referenced in the Complaint.  Accordingly, MAC reserves the right to file a motion to dismiss MAC on these grounds among others.

Sincerely,


/s/ Tariq Mundiya_____

Tariq Mundiya
Matthew W. Edwards
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
tmundiya@willkie.com
medwards@willkie.com

cc:     All counsel (via email and ECF)