PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3166

WRITER'S DIRECT FACSIMILE
(212) 492-0166

WRITER'S DIRECT E-MAIL ADDRESS
aehrlich@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
BRIAN M. JANSON
JAREN JANGHORBANI

MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

January 16, 2015

<u>**Via ECF and Email**</u>

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      *F5 Capital* v. *Pappas et al*, No. 1:14-cv-09356-AT

Dear Judge Torres:

    Pursuant to Section III.A. of Your Honor's Individual Rules of Practice in Civil Cases (the "Individual Rules"), we are writing on behalf of all defendants in this matter (collectively, "Defendants") to seek a pre-motion conference and to set forth the bases for Defendants' anticipated motion to dismiss the complaint of plaintiff F5 Capital ("F5") pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to Section III.B. of the Individual Rules, Defendants sent F5 a letter setting forth the specific pleading deficiencies in the complaint. F5 responded by letter in which it stated why it believes its allegations are adequately pleaded and did not indicate that it would seek leave to amend the complaint. However, with limited exceptions, F5 cited no "controlling authorit[ies] that support the pleadings as filed," as the Individual Rules require.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
The Honorable Analisa Torres                                                                                              2

## I.   The Parties and Claims

F5 is a Cayman Islands company that purports to be a shareholder of Star Bulk Carriers Corp. ("Star Bulk"). (Compl. ¶ 11.)[1] Star Bulk is a global shipping company providing worldwide seaborne transportation solutions in the dry bulk sector. (*Id.* ¶ 12.) F5's owner, Hsin Chi "Nobu" Su, is a former chairman and director of Star Bulk who resigned from its board in 2008. (*Id.* ¶ 5.) Defendants are various individuals who comprise Star Bulk's current and former board of directors as well as various business entities that are Star Bulk shareholders or their affiliates. (*Id.* ¶ 13-48.) F5 filed this matter in New York Supreme Court asserting three purported derivative claims on behalf of Star Bulk and one direct claim on behalf of Star Bulk shareholders unaffiliated with Defendants. (*Id.* ¶ 1.) Defendants thereafter removed this matter to this Court pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), and F5 did not contest removal. In its complaint, F5 alleges that Defendants engaged in self-dealing by causing Star Bulk to do the following on purportedly unfair terms: (1) acquire another shipping company, Oceanbulk Carriers LLC (the "Oceanbulk Merger"); (2) acquire 34 drybulk vessels from Excel Maritime Carriers Ltd. (the "Excel Transaction"); and (3) enter into certain service contracts (the "Service Contracts"). (*Id.* ¶ 2.) F5's three derivative claims, asserted against various groupings of Defendants, are for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and corporate waste. (*Id.* ¶¶ 130-38.) F5 also asserts a direct, putative class action claim for dilution. (*Id.* ¶¶ 139-42.)

## II.   Bases for Defendants' Motion to Dismiss the Complaint

### A.   *F5's Derivative Claims Are Barred Because F5 Has Not Adequately Pleaded Demand Futility, and the Transactions Are Subject to the Business Judgment Rule*

F5's derivative claims should be dismissed because the complaint does not adequately plead demand futility and the challenged transactions are subject to the business judgment rule. A derivative plaintiff must make pre-suit demand on the corporation's board of directors unless the complaint pleads particularized facts creating "a reasonable doubt . . . that (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Rosenquist* v. *Economou*, Sup. Ct. Case No. 2010-002, slip op. at 11 (Rep. Marshall Islands Oct. 3, 2011) (quoting *Aronson* v. *Lewis*, 473 A.2d 805, 814 (Del. 1985), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000)); *see also* Fed. R. Civ. P. 23.1.[2] To meet these "quite high" and "demanding" standards, *Loveman* v. *Lauder*, 484 F. Supp. 2d 259, 265 (S.D.N.Y. 2007), a plaintiff must show that a

---

[1] For purposes of this letter and our anticipated motion, we assume the truth of F5's allegations, as we must, but reserve all of our rights to contest them at a later stage should these proceedings continue.

[2] In our letter to F5, we relied on Delaware law because Star Bulk is incorporated in the Marshall Islands, which generally applies the common law of Delaware and other states with "substantially similar legislative provisions." *See* Marshall Islands Business Corporation Act § 13. In its letter, F5 suggested, without explanation, that New York law may govern its claims but responded to our letter by relying on Delaware law. Since there is at this point apparently no disagreement between the parties on the applicable law, we rely on Delaware law as well as Marshall Islands law.

majority of the directors are controlled by an external influence or derived a personal benefit from the challenged transaction, or that the transaction was tantamount to corporate waste, *see id.*; *see also In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317, 323 (S.D.N.Y. 2008).

The allegations in the complaint do not meet the standards articulated above. As a starting point, F5 concedes that it has not made demand on Star Bulk's board. (Compl. ¶ 120.) With respect to the Oceanbulk Merger, F5 has not shown interestedness for at least six of the nine directors. F5 alleges that "well-developed connections" and "established relationships" are evidence of Defendants Softeland's, Schmitz's, and Zavvos's alleged lack of independence, and suggests that Defendants Shourie, Stephens, and Kemp—who, along with Zavvos, were not on the board at the time of the Oceanbulk Merger—are conflicted because of "loyalty to their employer, Oaktree." (*Id.* ¶¶ 127-29.) However, mere business or personal relationships, without particularized allegations of individual benefit or direct influence, do not excuse demand. *See In re Sanchez Energy*, 2014 Del. Ch. LEXIS 239, at *20 (Del. Ch. Nov. 25, 2014). This Court thus has rejected allegations similar to F5's. *See In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d at 323-25; *Carfagno v. Schnitzer*, 591 F. Supp. 2d 630, 636 (S.D.N.Y. 2008). For much the same reason, the complaint fails to adequately plead that Defendants Oaktree (and affiliated entities), Petros Pappas and/or Monarch (and affiliated entities) controlled the board of directors as constituted for either the Oceanbulk Merger or the Excel Transaction, or for the Service Contracts. Notably, in its letter to us on this topic, F5 did not cite a single legal authority to rebut the authorities we cited. Instead, F5 merely reproduced some of its deficient allegations and stated, *ipse dixit*, that they were adequately pleaded. They are not.

F5's other demand futility arguments are similarly infirm. The complaint makes no particularized allegation regarding a conflict with respect to the Excel Transaction for six of the directors—Defendants Pappas, Erhardt, Capralos, Softeland, Schmitz, and Zavvos—nor with respect to the Service Contracts for all directors but Pappas. (Compl. ¶¶ 106, 123, 129). F5's letter to us did nothing to explain how these allegations are sufficient under the law.

Moreover, the Oceanbulk Merger was approved by both a special committee of disinterested directors *and* the majority of the minority shareholders, and thus is subject to the business judgment rule. *See In re Kenneth Cole Prods., Inc.*, 2014 N.Y. App. Div. LEXIS 8037, at *1-2 (1st Dep't Nov. 20, 2014); *see also Kahn v. M&F Worldwide Corp.*, 88 A.3d 635, 639 (Del. 2014); Marshall Islands Bus. Corp. Act § 58. The complaint fails to allege that this transaction did not result from a valid exercise of business judgment. In its letter to us, F5's only response was to restate its allegations that the Oceanbulk Merger was consummated on purportedly inadequate terms and led Star Bulk to sustain losses. That response improperly conflates the business judgment rule with the entire fairness standard and thus ignores the fact that "[r]isk is inherent in almost every business decision, and the ability to weigh that risk against the potential for reward sans the apprehension of hindsight bias is central to the protection that the business judgment rule affords corporate decisionmakers." *Protas v. Cavanagh*, 2012 Del. Ch. LEXIS 88, at *44 (Del. Ch. May 4, 2012).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
The Honorable Analisa Torres                                                                                              4

   B.  *F5's Dilution Claim Should Be Dismissed*

   F5's dilution claim should be dismissed because although F5 purports to assert it as a direct claim, it is in fact derivative in nature. "Equity dilution claims are typically viewed as derivative under Delaware law." *Feldman v. Cutaia*, 956 A.2d 644, 655 (Del. Ch. 2007). Here, F5 alleges that the Oceanbulk Merger and the Excel Transaction resulted in the dilution of its Star Bulk interests and an increase in Defendants' Star Bulk interests. (Compl. ¶ 141.) Any supposed dilution of F5's Star Bulk interests, however, is necessarily shared on a *pro rata* basis by all Star Bulk shareholders not affiliated with Defendants, and F5 alleges no facts to suggest that it suffered individualized harm. As such, F5's dilution claim is derivative. *See, e.g., Green v. LocatePlus Holdings, Corp.*, 2009 Del. Ch. LEXIS 85, at *4-7 (Del. Ch. May 15, 2009).

   In its letter to Defendants, F5 asserted that its dilution claim is direct pursuant to the Delaware Supreme Court's decision in *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006). Under *Gentile*, equity dilution may support a direct claim where "(1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." *Id.* at 99-100. As this Court has explained, "*Gentile* involved allegations of corporate overpayment where the majority shareholder converted corporate debt owed to him into equity at a low conversion rate, and the corporation's overpayment for this debt resulted in a 'separate harm' to the minority in the form of '*an extraction from the [minority]*, and a *redistribution* to the controlling shareholder, *of a portion of the economic value* and voting power embodied in the minority interest,' leaving the minority 'entitled to recover the value represented by that overpayment' directly without regard to any derivative claim the corporation might have.'" *Transeo S.A.R.L. v. Bessemer Venture Partners*, 936 F. Supp. 2d 376, 391 n.4 (S.D.N.Y. 2013). (quoting *Gentile*, 906 A.2d at 94, 100) (emphasis added).

   The allegations here do not satisfy this pleading burden. Unlike in *Gentile*, there is no allegation here that Defendants extracted a disproportionate benefit from the Oceanbulk Merger from purportedly minority shareholders. F5 fixates on the unremarkable fact that, when Star Bulk issued additional shares, the proportion of total shares represented by F5's holdings decreased. (Compl. ¶ 66.) But F5 does not allege, for example, that its holdings were worth less than they were before the merger, or that any value was "redistributed" to Defendants. F5's mere allegation that Defendants' ownership of Star Bulk increased after the merger (*id.* ¶ 3) does not satisfy the *Gentile* requirement of "redistribut[ion]," especially where F5 acknowledges that Defendants' additional shares were exchanged for substantial value in the form of additional ships. (*E.g., id.* ¶¶ 53, 84.) Furthermore, *Gentile* involved an actual majority shareholder acting at the expense of the minority shareholders. F5 concedes that Star Bulk had no majority shareholder and that Defendants collectively owned less than 50% of the company. (*Id.* ¶ 65.) To the extent F5 alleges that Defendants controlled Star Bulk directors who in turn controlled Star Bulk, that allegation fails because "[w]hen alleging a control group with majority ownership, a plaintiff cannot simply lump together the holdings of the directors to reach this threshold absent a voting agreement among the group or a blood pact to act together." *St. Clair*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Analisa Torres                                                                                              5

*Shores Gen. Emps. Ret. Sys.* v. *Eibeler*, 745 F. Supp. 2d 303, 312 (S.D.N.Y. 2010) (internal quotation marks omitted). F5 makes no such allegations.

F5's dilution claim against the Monarch defendants should be dismissed for the additional reason that, as F5 admits, Monarch's proportionate share of stock *decreased* as a result of the Oceanbulk Merger. (Compl. ¶ 65.) For this reason alone, even if F5's dilution claim could be considered a direct claim, F5 still could not satisfy its pleading burden under *Transeo*.

C.   *F5's Corporate Waste Claim Should Be Dismissed*

In addition to being barred on demand futility grounds, F5's corporate waste claim should be dismissed for failure to state a claim. "A board's decisions do not constitute corporate waste unless they are exceptionally one-sided." *White* v. *Panic*, 783 A.2d 543, 554 (Del. 2001). Thus, "waste" is defined as "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Brehm*, 746 A.2d at 263 (internal quotation marks omitted). "As a practical matter, a stockholder plaintiff must generally show that the board irrationally squandered corporate assets—for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all." *White*, 783 A.2d at 554 (internal quotation marks and alteration omitted). "[A] corporate waste claim must fail if there is *any substantial* consideration received by the corporation, and there is a *good faith judgment* that in the circumstances the transaction is worthwhile." *Id.* (internal quotation marks omitted).

F5's Oceanbulk Merger allegations do not meet these standards. The complaint acknowledges that Star Bulk issued shares to acquire Oceanbulk along with its dry bulk carrier vessels and contracts for the construction of additional vessels, and has thereby become the "largest, diversified, ultra-modern U.S. listed dry bulk company." (Compl. ¶ 53.) F5's Excel Transaction allegations also fail to state a claim for waste because they recognize that Star Bulk received dry bulk vessels in exchange for cash and stock. (*Id.* ¶¶ 97, 104.) These allegations in fact *confirm* that Star Bulk received substantial consideration in connection with the transactions at issue.[3] Critically, the complaint does not contain any particularized facts suggesting that Defendants irrationally squandered corporate assets or caused Star Bulk to make payments in exchange for nothing. In its letter to Defendants, F5 cited no legal authority to defend its allegations. Instead, F5 conclusorily asserted that the transactions at issue were "fraught with self-dealing" and "were consummated" on "demonstrably unfair terms." Far from buttressing the complaint's facially deficient allegations, these assertions only underscore F5's failure to allege that "the economics of the transaction[s at issue] were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation." *Harbor Fin. Partners* v. *Huizenga*, 751 A.2d 879, 893 (Del. Ch. 1999).

---

[3] The market certainly did not see the Oceanbulk Merger the way F5 purports to. Star Bulk's stock price went up the day after the transaction was announced.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Analisa Torres                                                                 6

        D.      *F5 Is Not a Proper Derivative Plaintiff*

        A purported derivative plaintiff must meet certain requirements in order to pursue derivative claims. Although we currently intend to await further developments before raising F5's deficiencies as a derivative plaintiff, we wish to identify two bases on which Defendants may seek dismissal of F5's derivative claims.

        *First*, we have reason to believe that F5 cannot show, as it must, that it has held Star Bulk shares continuously from the first challenged transaction through the pendency of this matter. *See* Fed. R. Civ. P. 23.1(b)(1). Star Bulk's lists of registered shareholders and non-objecting beneficial owners from at least the time of the Oceanbulk Merger do not reflect F5 as a shareholder. Furthermore, F5 is currently enmeshed in litigation in federal court in Connecticut, designated *F5 Capital v. RBS Securities Inc., et al.*, No. 14-cv-1469 (D. Conn., filed Oct. 3, 2014) ("RBS"), in which F5 is litigating over its purported shares in Star Bulk. (*See* RBS Compl. ¶¶ 1, 19-22 (ECF No. 1).) We respectfully reserve the right to challenge F5's share ownership based on developments in RBS or otherwise.

        *Second*, this Court has dismissed purported derivative claims brought by litigants who, like F5, are pursuing the personal agendas of their owners because they cannot properly represent the interests of other shareholders. *See Meimaris ex rel. B+H Ocean Carriers v. Hudner*, 1995 U.S. Dist. LEXIS 9676, at *2 (S.D.N.Y. July 12, 1995). F5's owner, Mr. Su, is pursuing just such an agenda here, as reflected by his sustained campaign of litigation against several Defendants in courts both in the United States and elsewhere. We respectfully reserve the right to challenge F5's derivative plaintiff status based on developments in all such matters.

        \*   \*   \*

        We recognize that, pursuant to Your Honor's Individual Rules, the parties must attend a pre-motion conference prior to Defendants' filing their motion to dismiss. We respectfully request that Your Honor schedule the pre-motion conference for February 5, 2015 at 4:15 p.m., to take place at the same time as the already-scheduled initial pretrial conference.

        Sincerely,

        Andrew J. Ehrlich

cc:   All counsel (by e-mail and ECF)