WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401

MARK C. RIFKIN
212-545-4762
FAX 212-545-4653
rifkin@whafh.com

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603

January 26, 2015

**VIA ECF and EMAIL**

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    *F5 Capital v. Pappas, et al.*, No. 1:14-cv-09365-AT

Dear Judge Torres:

    We write on behalf of Plaintiff F5 Capital ("F5") pursuant to Section III.A of Your Honor's Individual Rules of Practice in Civil Cases in response to the January 16, 2015, letter from Tariq Mundiya, Esquire, to set forth the bases for F5's opposition to Defendants' anticipated motion to dismiss the Complaint. Counsel for the parties have exchanged pre-motion letters as required by Your Honor's Individual Practice Rule III.B. Defendants have cited no controlling authority that supports dismissal of the Complaint.

### I.    BACKGROUND

    For simplicity, F5 respectfully refers Your Honor to my letter in response to the pre-motion letter from Andrew J. Ehrlich, Esquire, for a description of the background of the litigation.

### II.    BASES FOR OPPOSING DEFENDANTS' MOTION TO DISMISS

#### A.    The Complaint Adequately Alleges a Claim for Aiding and Abetting Breach of Fiduciary Duty

    For the reasons stated in my January 26, 2015, response to the pre-motion letter from Mr. Ehrlich, F5 adequately pleads a claim for fiduciary duty. Under Delaware law,[1] a third-party can

---

[1] Marshall Islands law, where Star Bulk is incorporated, governs this case. *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 128 (S.D.N.Y. 1999) (citing *Klaxon Co.*



WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 2

be liable for aiding and abetting a breach of fiduciary duty by knowingly participating in the breach. *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 97 (Del. Ch. 2014).[2] Because the Complaint also alleges that Monarch and the other defendants on whose behalf you have written knew the terms of the Oceanbulk merger and the Excel transaction were grossly inadequate and unfair to Star Bulk, F5 also adequately pleads a claim against those defendants for aiding and abetting the breach of fiduciary duty.

Defendants do not dispute that Monarch and those other defendants had sufficient knowledge of the underlying facts. Instead, they argue that the Oceanbulk Merger and the Excel Transaction were not breaches of fiduciary duty because the two transactions were purportedly fair. As set forth in my letter to Mr. Ehrlich, the Complaint sufficiently alleges that the transactions were egregious and inherently unfair to Star Bulk and to the shareholders like F5 not affiliated with or acting in concert with defendants. We incorporate by reference herein our response to Mr. Ehrlich's pre-motion letter. Defendants' argument that these transactions delivered substantial value to Star Bulk purposefully ignores those well-pled allegations and presumes the outcome of a trial on the merits after full discovery.

Plainly, the Complaint alleges that Monarch and the other defendants on whose behalf Mr. Ehrlich has written knowingly participated in the grossly unfair transactions. In *In re Telecommunications, Inc. Shareholders Litig.*, 2003 Del. Ch. LEXIS 78, at *2 (Del. Ch. July 7, 2003) (citation omitted), the court identified some of the ways a plaintiff may plead knowing participation:

> [K]nowing participation may be inferred where the terms of the transaction are so egregious or the magnitude of side deals is so excessive as to be inherently wrongful. In addition, the Court may infer knowing participation if it appears that the defendant may have used knowledge of the breach to gain a bargaining advantage in the negotiations. The plaintiff's burden of pleading knowing participation may also be met through direct factual allegations supporting a theory that the defendant sought to induce the breach of fiduciary duty, such as through the offer of side payments intended as incentives for the fiduciaries to ignore their duties.

---

*v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)). On corporate matters, the Marshall Islands has adopted Delaware's decisional law. *See* Marshall Islands Business Corporation Act § 13 ("Insofar as it does not conflict with any other provision of this Act, the non-statutory law of the State of Delaware and those of other states with substantially similar legislative provisions is hereby declared to be and is hereby adopted as the law of the Republic.").

[2] We are responding to the issues raised in Defendants' letter under Delaware law. However, we reserve the right to argue that this case is governed by New York law, including BCL § 626, rather than Delaware law.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 3

The Complaint easily meets the burden for pleading knowing participation.[3] For example, in addition to alleging that the terms of the Oceanbulk and Excel transactions were grossly unfair to Star Bulk, the Complaint alleges that the Monarch Investors, Oaktree entities, and Pappas Defendants nearly doubled their collective ownership interest in Star Bulk through the merger. Compl. ¶ 3.

Citing *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049-50 (Del. 2004), Defendants mischaracterize the relationship between Monarch and the primary wrongdoers as "a mere outside business relationship." That argument is without merit. *First*, the issue in *Beam* was whether a friendship or outside business relationship would cast doubt upon a director's independence. *Id*. Beam had nothing to do with aiding and abetting liability. *Second*, the court recognized in that case that "[s]ome professional or personal friendships . . . may raise a reasonable doubt whether a director can appropriately consider demand." *Id*. at 1050. And *third*, the Complaint alleges a tangled web of longstanding relationships between Pappas, Monarch, and Oaktree, not merely unrelated, inconsequential, or intermittent outside business relationships. In addition to other unspecified relationships between Monarch and Pappas in the oil tanker business that were vaguely referred to in the Proxy Statement, the Complaint alleges that Monarch is a joint venturer with Oceanbulk Maritime and the Pappas family in the crude tanker business. Compl. ¶¶ 75 and 77. Monarch and Oaktree both participated in the Company's rights offering in May 2013 to acquire their substantial stakes in Star Bulk, which allowed Monarch to place Roger Schmitz – who conceived of the Oceanbulk merger – on the Board of Star Bulk.[4] Compl. ¶¶ 76 & 79. A third-party that induces a breach of fiduciary duty for its own purposes knowingly participates in the breach. *See, e.g.*, *Goodwin v. Live Entertainment, Inc.*, 1999 Del. Ch. LEXIS 5, *28 (Del. Ch. Jan. 22, 1999. Because Monarch's nominee on the Board, Mr. Schmitz, proposed the Oceanbulk transaction, this test is easily met here.

B. **Monarch Alternative Capital LP as a Defendant**

Monarch Alternative Capital LP "(MAC") is named as a defendant in ¶ 34 of the Complaint but not in the caption. MAC managed other Monarch entities that own shares of Star Bulk. Compl. ¶ 34. The inadvertent omission of MAC from the caption was an oversight.

---

[3] Although *Lee v. Pincus*, 2014 Del. Ch. LEXIS 229, at *42 (Del. Ch. Aug. 22, 2014), discusses a "stringent" standard for pleading knowing participation, it nonetheless relies upon the flexible standard set forth in *In re Telecommunications*, 2003 Del. Ch. LEXIS 78 at *2.

[4] For these reasons, the fact that Monarch's actual percentage ownership declined following the merger is of no significance. By virtue of its affiliation with Defendant Schmitz, Monarch's designee on the Board and the architect of the deal, Monarch was confident it would derive significant direct benefits by collaborating with Pappas and Oaktree in their other dealings.

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 4


MAC should have been listed in the caption as well as the body of the Complaint. In light of Your Honor's Individual Practice Rule III.B.i encouraging the parties to identify and resolve disputes over naming a wrong defendant or misnaming a defendant, we asked Mr. Mundiya to consent to an amendment of the caption to correct this oversight. Defendants have refused to do so. To correct the oversight, we will cross-move to amend the caption when we oppose Defendants' motion to dismiss the Complaint. The time to serve MAC has not expired. F5 has 120 days from the date of filing the complaint to effectuate service, meaning that F5 still has time to effect service. *See* CPLR 306-b and Fed. R. Civ. P. 4(m) (both of which require service within 120 days after filing of the complaint). Since Mr. Mundiya was not authorized to accept service, we have initiated service of the Complaint upon MAC and expect to complete service before February 20, 2015.

We are prepared to address these issues on February 5, 2015, during the initial pretrial conference.

Respectfully yours,

Mark C. Rifkin

MCR/772716

cc:   All counsel (by ECF and email)