## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 2770
SAN DIEGO, CA 92101

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401

MARK C. RIFKIN
212-545-4762
FAX 212-545-4653
rifkin@whafh.com

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603

January 26, 2015

**VIA ECF and EMAIL**

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *F5 Capital v. Pappas, et al.*, No. 1:14-cv-09365-AT

Dear Judge Torres:

We write on behalf of Plaintiff F5 Capital ("F5") pursuant to Section III.A of Your Honor's Individual Rules of Practice in Civil Cases in response to the January 16, 2015, letter from Bruce G. Paulsen, Esquire, to set forth the bases for F5's opposition to Defendants' anticipated motion to dismiss the Complaint. Counsel for the parties have exchanged pre-motion letters as required by Your Honor's Individual Practice Rule III.B. The defendants represented by Mr. Paulson have cited no controlling authority that supports dismissal of the Complaint against them.

### I. BACKGROUND

For simplicity, F5 respectfully refers Your Honor to my letter in response to the pre-motion letter from Andrew J. Ehrlich, Esquire, for a description of the background of the litigation.

### II. BASES FOR OPPOSING DEFENDANTS' MOTION TO DISMISS

#### A. The Court Has Personal Jurisdiction Over the Entity Defendants and Individual Defendants

Defendants' argument that this Court lacks personal jurisdiction over the Entity Defendants and the Individual Defendants must fail. Pursuant to the Merger Agreement between Star Bulk and Oceanbulk (which the Individual Defendants all either voted to approve as Star Bulk directors or personally benefitted from), all parties to the Merger Agreement, including a



WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 2

number of the Entity Defendants, "consent[ed] to the jurisdiction of any state or federal court sitting in Manhattan in New York City or in the Federal Southern District in the State of New York ... and irrevocably agree[d] that all actions or proceedings relating to this agreement, the merger or other transactions contemplated by this agreement may be litigated in such courts." Compl. ¶ 8.

In addition, the Shareholder Agreements between Star Bulk, Individual Defendants Petros Pappas and Milena Pappas and all of the Entity Defendants or their parent or controlling affiliate executed as of July 11, 2014 (after the merger of Star Bulk and Oceanbulk) provide an even broader consent to personal jurisdiction:

> Each party (a) irrevocably and unconditionally submits to the personal jurisdiction of the federal courts ... of the United States of America located in the City and County of New York ... (b) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court.

*See* Shareholders Agreement between Star Bulk and Oaktree, July 11, 2014, § 6.9; Shareholders Agreement between Star Bulk and the Pappas Shareholders, July 11, 2014, § 5.8. These consents are not limited to being related to the Merger Agreement or the Shareholder Agreements. There is no dispute that the Individual Defendants, as officers or directors of Star Bulk, are parties to the Merger Agreement and, therefore, have consented to personal jurisdiction in the New York Supreme Court and in this Court.

Under New York law, which the parties agreed would apply, such written consents to jurisdiction are presumptively valid and are enforced unless "shown by the resisting party to be unreasonable." *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (N.Y. 1996). Since Defendants consented to jurisdiction in New York, the Court may exercise its jurisdiction over them.

Defendants' argument that F5 was not a party to or a third-party beneficiary of the Merger Agreement and, therefore, cannot invoke its jurisdiction provisions is specious. In this derivative action, F5 is asserting rights on behalf of Star Bulk. Undoubtedly, Star Bulk has rights under the Merger and Shareholder Agreements, including the right to litigate in a New York court. As a derivative plaintiff, F5 is entitled to assert those rights on Star Bulk's behalf. *See, e.g., Harry Casper, Inc. v. Pines Assocs., L.P.*, 53 A.D.3d 764, (3d Dep't 2008) (derivative plaintiff is bound by forum selection clause in option agreement at issue).[1] Similarly,

---

[1] *See also Schleiff v. Baltimore & Ohio R.R. Co.*, 130 A.2d 321, 327 (Del. Ch. 1955) (holding that derivative plaintiff is bound by forum selection clause in litigation over corporate acquisitions); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 218 (Del. Ch. 2006) (same). Forum selection clauses are favored under New York law "because they provide certainty and predictability in resolving disputes." *Nat'l Union Fire Co. of Pittsburgh, Pa. v. Source One Staffing, LLC*, No. 652366-10, 2012 WL 3156438, at *3 (Sup. Ct. N.Y. Cnty. July

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 3

Defendants' argument that the Court should not enforce the consents because F5 is not "asserting Star Bulk's contractual rights under the agreements" fails because F5 is asserting Star Bulk's contractual right to rely on defendants' irrevocable consent to personal jurisdiction in this Court.[2]

It is well-settled that, as a derivative plaintiff, F5 stands in Starbulk's shoes. *Sagarrra Invesiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.2d 1074, 1079 (Del. 2011); *Tzolis v Wolff*, 10 NY3d 100 (2008) (discussing history of derivative claims and standing under New York law). Accordingly, derivative plaintiffs are bound by and may invoke consent to jurisdiction clauses in agreements that are the subject of their derivative claims. *See Pierce v. Globeop Fin. Servs. LLC*, NO. 601250/09, 2009 N.Y. Misc. LEXIS 5093 at *4, 2009 NY Slip Op 32609, (Sup. Ct. N.Y. Cty. Nov. 5, 2009) (enforcing consent to arbitration clause against derivative plaintiffs because they "stand in the shoes of the entity on behalf of which they are suing, *i.e.*, the Fund, and, hence are subject to, and bound by, the arbitration provision that bound the Fund").

Moreover, CPLR 302(a)(2) provides that personal jurisdiction exists in New York when a defendant "commits a tortious act within the state," or when a defendant "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The Individual Defendants all "derive[] substantial revenue from interstate or international commerce" and committed a tortious act in the state insofar as they breached their fiduciary duty to the Star Bulk shareholders by entering into a Merger Agreement with a New York choice of law provision. Compl. ¶¶ 8, 13-22. Thus, all the defendants in this action, including the Individual and Entity Defendants, are subject to personal jurisdiction in New York.

Defendants intend to argue that the Complaint fails to allege any tortious acts committed in the State of New York. That is not correct. The Oceanbulk Merger was negotiated substantially (if not exclusively) in New York and the Merger and Shareholder Agreements are

---

25, 2012) (Bransten, J.). Thus, under New York law, "public policy . . . supports a broad reading of these clauses." *Triple Z Postal Servs. v. UPS*, 13 Misc.3d 1241(A), at *6 (Sup. Ct. N.Y. Cty. 2006).

[2] *OTK Assocs. v. Friedman*, 85 A.3d 696, 720-21 (Del. Ch. 2014), cited in Mr. Paulsen's letter, does not apply to here for at least three reasons. *First*, that case deals with forum selection clauses, not consents to personal jurisdiction. *Second*, the Vice-Chancellor relied heavily upon the fact that the plaintiff was trying to invalidate the very transaction documents that included the forum selection and choice of law provisions upon which the plaintiff was relying. And *third*, F5 is not on the seller-side of the transaction, as the plaintiff was in that case.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 4

made subject to New York law, jurisdiction, and venue. In addition, the Star Bulk general shareholders' meeting was held in New York City on October 24, 2014, and F5 believes that most if not all of the Individual Defendants were in attendance at the meeting in New York. Certainly, the Individual Defendants who were re-elected to the Board on that date were present in New York, and Individual Defendant Spyros Capralos rang the closing bell on the floor of the New York Stock Exchange that afternoon.

An independent basis for jurisdiction exists under NY Gen'l Obligation Law 5-1402, which provides in pertinent part that "any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part," which relates to "any obligation arising out of a transaction covering in the aggregate, not less than one million dollars," and "which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state." N.Y. GOL 5-1402(1)(a) and (b). This action was originally commenced in the New York Supreme Court, whose jurisdiction was properly invoked for this additional reason as well.

Finally, Plaintiff intends to seek limited jurisdictional discovery in this action. Courts regularly permit parties to conduct limited discovery into issues pertaining to jurisdiction at an early stage of litigation. *See, e.g., Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002); *Allojet PLC v. Vantage Assocs.*, No. 04-cv-05223(SAS), 2005 U.S. Dist. LEXIS 4006, at *43-44(S.D.N.Y. Mar. 15, 2005) ("In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway, and a district court may grant jurisdictional discovery…" (internal citations omitted)). Here, such discovery is needed to determine the exact nature of the Individual Defendants contacts in New York as well as the corporate relationships between the various Defendants.

### B.  F5 Properly Served the Complaint Upon the Service Defendants

Defendants' argument that the Individual Defendants and Renee Kemp (collectively the "Service Defendants"), were not properly served is meritless. Kira Bucca, an Office Manager and agent of Star Bulk, accepted service on behalf of all the Service Defendants on November 5, 2014. Accordingly, the process server filed affidavits of service on all Service Defendants with the New York Supreme Court on November 6, 2014. *See* Exhibit A hereto. On November 5, 2014, the process server also served another copy of the Summons and Complaint on each of the Service Defendants via first class mail, thereby properly effectuating service pursuant to CPLR 308(2).

The Service Defendants do not deny that Ms. Bucca was authorized to accept service on behalf of the Service Defendants. Instead, citing *Lorensen v. Digman*, No. 97 CV 0997, 1998 U.S. Dist. LEXIS 861, at *6 (N.D.N.Y. Jan. 27, 1998), they intend to argue that they may still contest

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

**VIA ECF and EMAIL**
Honorable Analisa Torres
January 26, 2015
Page 5

service. *Lorensen* does not support dismissal of the Service Defendants for insufficient service of process. In that case, the employee upon whom service was made denied telling the process server that she was authorized to accept service for the defendants. Ms. Bucca has not denied telling the process server that she was authorized to accept service on behalf of all the Service Defendants here.

Even if service on the Service Defendants had been ineffective, which it was not, F5 has 120 days from the date of filing the complaint to effectuate service, meaning that F5 still has time to correct any defect in service. *See* CPLR 306-b and Fed. R. Civ. P. 4(m) (both of which require service within 120 days after filing of the complaint). That time period may be extended for good cause, as certainly exists here where an adult individual at the offices of Star Bulk with apparent authority to accept service on behalf of all the Service Defendants did so. Thus, dismissal on the basis of insufficient service of process is unwarranted and premature.

### C. F5 Intended to Name Bluesea Invest and Holding Limited Rather than Oceanbulk Shipping LLC as a Defendant

F5 intended to name Bluesea Invest and Holding Limited, not Bluesea Oceanbulk Shipping LLC ("Bluesea Invest"), and will serve Bluesea Invest promptly. In light of Your Honor's Individual Practice Rule III.B.i encouraging the parties to identify and resolve disputes over naming a wrong defendant or misnaming a defendant, we asked Mr. Paulsen to consent to an amendment of the caption to reflect the correct corporate entity and agree to accept service on behalf of Bluesea Invest. However, Mr. Paulsen declined to do so. To correct the misnaming, we will cross-move to name Bluesea Invest, the correct corporate party, when we oppose Defendants' motion to dismiss the Complaint. The time to serve Bluesea Invest has not expired. F5 has 120 days from the date of filing the complaint to effectuate service, meaning that F5 still has time to effect service. *See* CPLR 306-b and Fed. R. Civ. P. 4(m) (both of which require service within 120 days after filing of the complaint). Since Mr. Paulsen declined to accept service, we have initiated service of the Complaint upon Bluesea Invest and expect to complete service before February 20, 2015.

We are prepared to address these issues on February 5, 2015, during the initial pretrial conference.

Respectfully yours,

Mark C. Rifkin

cc:   All counsel (by ECF and email)