UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| F5 CAPITAL, A CAYMAN ISLANDS CORPORATION<br><br>       Plaintiff,<br><br>    -against-<br><br>PETROS PAPPAS, *et al.*,<br><br>       Defendants<br><br>    -and-<br><br>STAR BULK CARRIERS CORP.,<br><br>      Nominal Defendant. | No. 14-cv-09356 (AT)(MHD)<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MONARCH DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION**

DATED: March 4, 2015

               WILLKIE FARR & GALLAGHER, LLP
               Tariq Mundiya
               Matthew W. Edwards
               tmundiya@willkie.com
               787 Seventh Avenue
               New York, NY 10019-6099
               (212) 728-8000 (telephone)
               (212) 728-8111 (facsimile)

               *Attorneys for Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, P Monarch Recovery Ltd., and Roger Schmitz*

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

FACTS ............................................................................................................................................3

I. ALL AIDING AND ABETTING CLAIMS (SECOND CAUSE OF ACTION) AGAINST MONARCH MUST BE DISMISSED. ...........................................5

    A. The Oceanbulk Merger ........................................................................................7

    B. The Excel Transaction ..........................................................................................9

    C. The Service Contracts ........................................................................................10

II. F5'S CLAIM AGAINST MONARCH FOR DILUTION (FOURTH CAUSE OF ACTION) MUST BE DISMISSED. ..............................................................10

CONCLUSION .............................................................................................................................10

**TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................5

*BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4 (S.D.N.Y. 2012) .........................................5

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d
    1040 (Del. 2004) ..........................................................................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................5, 8, 9

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir.1993) .........................................................3

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .........................................3

*In re Gen. Motors (Hughes) S'holder Litig.*, No. Civ.A. 20269, 2005 WL
    1089021 (Del. Ch. May 4, 2005), *aff'd*, 897 A.2d 162 (Del. 2006) .........................................6

*Genna v. Sallie Mae, Inc.*, No. 11 Civ. 7371(LBS), 2012 WL 1339482
    (S.D.N.Y. Apr. 17, 2012) ............................................................................................................3

*Gentile v. Rossette*, 906 A.2d 91 (Del. 2006) ................................................................................10

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ..........................................................3

*Lee v. Pincus*, C.A. No. 8458-CB, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014).............. 6, 7, 8, 9

*Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385 (S.D.N.Y. 2011) ..........................................2

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) .........................................................................6

*Monroe Cnty. Emps.' Ret. Sys. v. Carlson*, Civil Action No. 4587-CC,
    2010 WL 2376890 (Del. Ch. June 7, 2010) ..............................................................................6

*Nebenzahl v. Miller*, No. CIV. A. 13206, 1996 WL 494913 (Del. Ch. Aug. 26, 1996) .............6, 8

*Orman v. Cullman*, No. Civ.A. 18039, 2004 WL 2348395 (Del. Ch. Oct. 20, 2004) ....................7

*In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022 (Del. Ch. 2012) ...............................................7

*In re Telecomms., Inc.*, No. Civ.A 16470-NC, 2003 WL 21543427
    (Del. Ch. July 7, 2003) ................................................................................................................6

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006).....................5

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, and P Monarch Recovery Ltd. (collectively, "Monarch"), by and through Monarch's undersigned attorneys, respectfully move this Court to dismiss with prejudice the Second and Fourth Causes of Action alleged in the Complaint of Plaintiff F5 Capital ("F5"). In addition to claims addressed in the Motion to Dismiss joined by all Defendants that is also being filed today ("Joint Motion to Dismiss"), this Court should dismiss claims against Monarch.[1]

## PRELIMINARY STATEMENT

This case arises from three transactions entered by Star Bulk Carriers Corporation ("Star Bulk"). The gravamen of F5's claims is that because some of the Defendants or their affiliates stood on both sides of the various transactions, certain Defendants stood to gain a benefit that was not similarly shared by all stockholders. Thus, F5 alleges that various Star Bulk directors breached their fiduciary duties of good faith and fair dealing to the shareholders. F5's Second Cause of Action seeks to hold Monarch and others accountable for these same supposed violations by alleging that they aided and abetted the supposed breaches of fiduciary duty.

F5's Second Cause of Action must be dismissed as to Monarch, however, because F5 does not allege (apart from conclusory statements untethered to specific facts) that *Monarch*

---

[1] This brief is also being submitted on behalf of defendant Roger Schmitz, a Star Bulk director. Mr. Schmitz, as well as Monarch, join the arguments set forth in the Joint Motion to Dismiss as to why the Complaint fails to state a claim. The allegations against Mr. Schmitz, who is affiliated with Monarch, do not amount to any claim for breach of fiduciary duty. At best, they amount to a claim that he has been involved in other transactions involving Oaktree (Compl. ¶¶ 68-72) and was involved in structuring the Oceanbulk merger (Compl. ¶ 127). That is not enough to state a claim for breach of fiduciary duty, even assuming Plaintiff could overcome all of the additional hurdles established in the Joint Motion to Dismiss.

1

stood on both sides of the Oceanbulk Merger or the other transactions; that Monarch received any special benefit that was not shared equally by all other shareholders; or that Monarch's interests are not aligned with disinterested shareholders. To the contrary, as explained below, F5 acknowledges that Monarch shared the same fate as the other unaffiliated shareholders.

Delaware law protects the ability of investors like Monarch to pursue their own economic interests without confronting the same threat of litigation constantly faced by directors and other fiduciaries, so it does not impose on investors the same duties and liabilities as it imposes on other potential defendants.[2] This extra protection takes the form of a "stringent" *scienter* requirement for pleading a claim for *aiding and abetting* an alleged breach of fiduciary duty. In other words, a plaintiff must provide non-speculative, fact-based allegations that a defendant *knowingly* participated in breaches of fiduciary duties by others. As the Joint Motion to Dismiss makes clear, F5's breach of fiduciary duty claim must be dismissed, so no aiding and abetting claim can go forward. But even if the primary fiduciary duty claims were to survive—and they cannot (Joint Motion to Dismiss at 8-23)—the aiding and abetting claims would still fail.

F5 does not and cannot allege that Monarch knew that its actions would facilitate a breach of fiduciary duty by the Star Bulk directors. Knowing participation by a third party may be inferred where a plaintiff provides fact-based allegations that (i) the investor knew that the transaction at issue was "*inherently* wrongful" or "*per se* illegal," or (ii) the investor engaged in some "side deal [which] is so excessive as to be inherently wrongful." *Infra* at 5-7. But the entire complaint against Monarch is speculation heaped upon speculation. At most, F5 claims

---

[2]     Star Bulk is a Marshall Islands corporation. The Republic of the Marshall Islands, by statute, has "adopt[ed] Delaware law" with respect to corporate matters. *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 397 (S.D.N.Y. 2011); *see* MIBCA, Part I, § 13 (Marshall Islands law is "uniform with the laws of the State of Delaware and other places of the United States of America with substantially similar legislative provision.").

that Monarch *may* have other business dealings with the other Defendants that *may* one day yield some undefined benefit to Monarch. If this were enough to survive a motion to dismiss, aiding and abetting claims could never be dismissed.

As to F5's Fourth Cause of Action for dilution, as set forth in the Joint Motion to Dismiss (at 28-31), to plead a claim for dilution, F5 must allege that the defendants' proportional share of Star Bulk *increased* in exchange for no actual value, resulting in a corresponding *extraction of value* from F5. However, any claim against Monarch must be dismissed because Monarch's proportional share in Star Bulk *also decreased at the same rate as F5's*. Compl. ¶¶ 65-66.

## FACTS

The Joint Motion to Dismiss contains a detailed description of the so-called (i) "Oceanbulk Merger," (ii) "Excel Transaction," and (iii) "Service Contracts." To avoid overburdening the Court, this brief will not contain a duplicative recitation and will address factual allegations that are unique to Monarch.

<u>The Oceanbulk Merger</u>: Monarch's only alleged involvement in the Oceanbulk Merger was its participation in a so-called "Voting Agreement" with Oaktree Dry Bulk Holdings LLC, Millennia Holdings LLC, and Mirabel Shipholding & Invest Limited. Compl. ¶ 73; Voting Agreement (June 16, 2014).[3] Under the terms of the Voting Agreement, Monarch agreed to vote

---

[3] *See* Exhibit 1 to Declaration of Tariq Mundiya. The Court may take judicial notice of the terms of the Voting Agreement, which was publicly filed with the SEC, for purposes of Monarch's Motion to Dismiss "because there was undisputed notice to plaintiff[] of [its] contents and [it was] integral to plaintiffs' claim." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). The Voting Agreement is integral to the Plaintiff's case because its claim against Monarch rests upon Monarch having entered that agreement. *See, e.g.*, Compl. ¶¶ 73-74; *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *accord Genna v. Sallie Mae, Inc.*, No. 11 Civ. 7371(LBS), 2012 WL 1339482, at *2 (S.D.N.Y. Apr. 17, 2012) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)) (taking judicial notice of documents filed with the SEC).

its shares of Star Bulk common stock in favor of the Oceanbulk Merger at the July 11, 2014 Special Meeting. Voting Agreement § 2.1.

F5 admits that the Voting Agreement did not provide any special "consideration . . . to Monarch in exchange for the Voting Agreement." Compl. ¶ 74. Indeed, F5 admits that the Oceanbulk Merger had the same impact on Monarch's ownership of Star Bulk as it had on F5's and the other unaffiliated shareholders' ownership of Star Bulk. Compl. ¶¶ 65-66.[4] This is fatal to its claims against Monarch. F5 nevertheless speculates that "Monarch *may* expect to reap some undisclosed benefit in its dealings with Oaktree and Pappas Groups in unrelated business of no benefit to Star Bulk" based on F5's "[p]resum[ption]" that "Monarch would only assent in advance to the Voting Agreement for some economic consideration from . . . the Oceanbulk sellers and/or the Oaktree and Pappas Groups." Compl. ¶ 74 (emphasis added).

While F5 also tries to allege "extensive economic affiliations with Oaktree, Pappas, [and] their related entities," it identifies one historical affiliation between Monarch and the Pappas Defendants. Compl. ¶ 75. Other affiliations are admittedly speculative. Compl. ¶ 77 ("these 'business relationships' *may* extend beyond [the one affiliation]") (emphasis added). The only alleged affiliation between Monarch and Oaktree is that both participated in Star Bulk's May 2013 rights offering. Compl. ¶ 76.

The Excel Transaction: Monarch had no involvement with the Excel Transaction. All F5 alleges in this regard is that, to finance the Excel Transaction, "Unity Holding LLC (a wholly-owned subsidiary of Star Bulk) entered into a Senior Secured Credit Agreement ("SSCA") with,

---

[4] F5 alleges that its proportional ownership of Star Bulk declined from 1.4% of outstanding shares to .49% of outstanding shares, which represents about a 65% decline in proportional ownership. Compl. ¶ 66. F5 admits, however, that Monarch's proportional ownership of Star Bulk declined from 21% of outstanding shares to 7.4% of outstanding shares, which *also* represents about a 65% decline in proportional ownership. Compl. ¶ 65.

4

upon information and belief, various entities affiliated with the Pappas Defendants, the Oaktree Investors, *and/or* the Monarch Investors." Compl. ¶ 103 (emphasis added).  But both the SSCA itself and press release announcing the transaction—which was incorporated into the Complaint (Compl. ¶ 97) and publicly filed with the SEC—omit any mention of Monarch.

<u>The Service Contracts</u>:  F5's bare allegations regarding the Service Contracts do not mention Monarch.  Compl. ¶¶ 106-107.

Those, then, are the allegations against Monarch.  They are paltry and do not come close to meeting the standards required to withstand a motion to dismiss.

## **ARGUMENT**

A complaint will only survive a motion to dismiss if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). The Court should not "draw *unreasonable* inferences" from F5's allegations. *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) (emphasis added).

### I.   ALL AIDING AND ABETTING CLAIMS (SECOND CAUSE OF ACTION) AGAINST MONARCH MUST BE DISMISSED.

As an initial matter, because the Complaint does not sufficiently allege that the Director Defendants breached their fiduciary duties in connection with either the Oceanbulk Merger or the Excel Transaction, there can be no claim for aiding and abetting against Monarch. *E.g.*, *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 215 (Del. Ch. 2006).  Even if F5 had sufficiently pled a claim for breaching fiduciary duties, F5's aiding and abetting claims against Monarch must be dismissed.

5

Delaware law protects a non-fiduciary's mere participation in a corporate deal that is otherwise challenged as a breach of *a director's* fiduciary duties. That protection comes in the form of a *scienter* requirement necessary to plead a claim against investors like Monarch. Under Delaware law, a "complaint must allege [among other things] . . . knowing participation in [the alleged] breach by the defendants." *Malpiede v. Townson*, 780 A.2d 1075, 1096-97 (Del. 2001) (aiding and abetting claim dismissed even "assum[ing], without deciding . . . that the board's conduct was grossly negligent and constituted a breach of its duty of care") (internal quotations omitted). This "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Id.* at 1097. This "stringent" requirement "turn[s] on proof of *scienter*." *Lee v. Pincus*, C.A. No. 8458-CB, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014). That Delaware law would require such stringent standards before stockholders are subject to liability is no surprise because even *conflicted* transactions "are not *per se* invalid under Delaware law." *Monroe Cnty. Emps.' Ret. Sys. v. Carlson*, Civil Action No. 4587-CC, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010).

Knowledge may be inferred where "the terms of the transaction are so egregious or the magnitude of side deals is so excessive as to be *inherently wrongful*." *In re Telecomms., Inc.*, No. Civ.A 16470-NC, 2003 WL 21543427, at *2 (Del. Ch. July 7, 2003) (emphasis added). "Even if Plaintiff were able to show the Director Defendants breached their fiduciary duties, . . . [a] court can infer a non-fiduciary's knowing participation *only* if a fiduciary breaches its duty *in an inherently wrongful* manner, and the plaintiff alleges specific facts from which that court could reasonably infer knowledge of the breach." *Nebenzahl v. Miller*, No. CIV. A. 13206, 1996 WL 494913, at *7 (Del. Ch. Aug. 26, 1996) (emphasis added). "Inherently wrongful" is tantamount to "*per se* illegal." *In re Gen. Motors (Hughes) S'holder Litig.*, No. Civ.A. 20269,

6

2005 WL 1089021, at *24 (Del. Ch. May 4, 2005), *aff'd*, 897 A.2d 162 (Del. 2006). F5 cannot meet this pleading burden as to any of the transactions at issue here.

### A. The Oceanbulk Merger

F5's allegations regarding the Oceanbulk Merger fall far short of the requirements to plead *scienter*. F5's complaint is that Monarch entered the Voting Agreement, which helped the Oceanbulk Merger close. But a third party like Monarch cannot be held liable for aiding and abetting an alleged breach of fiduciary duty by merely exercising its right to vote in favor of the transaction, even where that third party's "consent was necessary" for the transaction at issue to move forward. *Lee*, 2014 WL 6066108, at *14. Indeed, "voting agreements, of course, are perfectly legal," *Orman v. Cullman*, No. Civ.A. 18039, 2004 WL 2348395, at *7 n.91 (Del. Ch. Oct. 20, 2004), and are routinely upheld, even when challenged, *see, e.g.*, *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1048-49 (Del. Ch. 2012).

Moreover, none of F5's allegations supports an inference that Monarch knew that the Oceanbulk Merger would constitute a breach of the directors' fiduciary duties. The terms of the Oceanbulk Merger itself were nowhere close to being "inherently wrongful" or "*per se illegal*." While F5 devotes much of its Complaint to alleging that the Oceanbulk Merger was "conflicted" because certain directors stood on both sides of the transaction, as explained *supra* at 6, that did not constitute a breach of fiduciary duty, and it certainly does not make a transaction *per se* illegal or inherently wrongful.

Plaintiff's allegations regarding the value of the deal fail to satisfy F5's pleading burden for similar reasons. The gravamen of F5's complaint is that the price Star Bulk paid in the Oceanbulk Merger was unfair. Compl. ¶ 2. Even if F5 were correct (which it is not), that is not sufficient to demonstrate that Monarch acted with *scienter*. *Lee*, 2014 WL 6066108, at *13

7

(dismissing aiding and abetting claim even assuming "it is reasonably conceivable that [the transaction] was *not entirely fair*") (emphasis added).

Nor does F5 allege any side-deals from which Monarch's scienter may be inferred. Instead, F5 asserts that Monarch has economic affiliations with Oaktree and Pappas. Compl. ¶ 75. That is not sufficient to sustain an "aiding and abetting" claim. The only alleged affiliation between Monarch and Pappas is a single joint venture, plus rank speculation that Monarch's business relationships with the Pappas family "*may* extend beyond [the joint venture]." *See* Compl. ¶¶ 75, 77 (emphasis added). As to Monarch's relationship to Oaktree, the Complaint states only that "Monarch and Oaktree both participated in [Star Bulk]'s rights offering in May 2013." Compl. ¶ 76. Based upon these meager "affiliations," F5 makes the conclusory and, frankly, unreasonable "[p]resum[ption]" that Monarch sought to ingratiate itself with Oaktree and Pappas to sacrifice Monarch's interest in Star Bulk in exchange for some future, undefined benefit. Compl. ¶ 74. Such speculative and unreasonable allegations do not satisfy a plaintiff's pleading burdens. *See Nebenzahl*, 1996 WL 494913, at *7 (dismissing aiding and abetting claim where "there is only conclusion and conjecture [that defendant] knowingly participated in [a] breach"); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief *above the speculative level*.") (emphasis added). Delaware law does not allow an inference of wrongdoing simply because parties may have business relationships with *other parties* alleged to engage in wrongdoing. *See, e.g.*, *Lee*, 2014 WL 6066108, at *14.[5]

---

[5] In addition, an analogous question often arises regarding directors' conflicts, where Delaware law provides that "a mere outside business relationship" between two parties is insufficient to impugn the parties' "independent business judgment." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1049-50 (Del. 2004). So too here: Just because Monarch may have an outside business relationship with the other Defendants does not mean that its independent business judgment was impaired.

8

The Supreme Court's decision *Twombly* is instructive here. In that case, as in this one, the "question [was] whether the challenged . . . conduct stem[med] from [an] independent decision *or from an agreement, tacit or express*," to engage in wrongful behavior. 550 U.S. at 553 (internal punctuation omitted; emphasis added). The Supreme Court held that the plaintiff failed to meet its pleading burden because its allegations offered "no reason to infer that the companies *had* agreed among themselves to do *what was only natural anyway*." *Id.* at 566 (emphasis added). The mere *possibility* that the parties *might have agreed* was thus deemed insufficiently speculative to state a claim pursuant to Federal Rule of Civil Procedure 8(a). *Id.* F5's similarly speculative allegations should, like the allegations in *Twombly*, be dismissed.

## B.     The Excel Transaction

The Complaint includes no non-speculative allegation that Monarch participated *at all* in the Excel Transaction, much less knowingly. The Plaintiff's only allegation against Monarch in connection with the Excel Transaction is that, "upon information and belief," entities "affiliated with the Pappas Defendants, the Oaktree Investors, *and/or* the Monarch Investors" entered into the Senior Secured Credit Agreement ("SSCA") to finance the transaction. Compl. ¶ 103 (emphasis added). The Complaint's suggestion that Monarch had any involvement in the SSCA is merely a guess, as Monarch is mentioned nowhere in the SSCA or accompanying press release. *Supra* at 4. This is not surprising, because Monarch was *never* a party to the SSCA.

In any event, F5 does not allege that any term of the Excel Transaction was unfair, much less inherently wrongful or *per se* illegal. Thus, even if F5 could allege some tenuous connection between Monarch and the Excel Transaction (which it cannot), this still would not constitute "knowing" participation in a breach of fiduciary duty. *Lee*, 2014 WL 6066108, at *13.

9

### C. The Service Contracts

The two allegations related to the Service Contracts omit any mention of Monarch or any suggestion that Monarch participated in those transactions. Compl. ¶¶ 106-107. Any aiding and abetting claim against Monarch related to those contracts therefore must be dismissed.

## II. F5'S CLAIM AGAINST MONARCH FOR DILUTION (FOURTH CAUSE OF ACTION) MUST BE DISMISSED.

A shareholder asserting a direct claim for dilution must allege, among other things, "*an increase in the percentage of the outstanding shares owned by the controlling stockholder*, and a *corresponding* decrease in the share percentage owned by the public (minority) shareholders." *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006). In this case, however, F5 has affirmatively alleged that Monarch's interest *decreased* from "21% of Star Bulk shares prior to the Merger [to] 7.4% after." Compl. ¶ 65; *compare* Compl. ¶ 66 (F5's shares in Star Bulk represented 1.4% of the total outstanding shares prior to the Oceanbulk Merger and 0.49% after.).[6] Thus, Monarch's interest was reduced in the same proportion as F5's. *Supra* at 4 n.3. Accordingly, independently of the reasons in the Joint Motion to Dismiss, the dilution claim against Monarch must be dismissed because Monarch was diluted in the same proportional amount as the Plaintiff.

### CONCLUSION

For the foregoing reasons, Monarch respectfully requests that the Court dismiss F5's Second and Fourth Causes of Action against Monarch with prejudice.

---

[6] Moreover, Monarch was never a "controlling stockholder" under *Gentile*, as it controlled only 21% of Star Bulk shares. Compl. ¶ 65.

DATED:  March 4, 2015

Respectfully submitted,

WILLKIE FARR & GALLAGHER, LLP

By: /s/ Tariq Mundiya
    Tariq Mundiya
    Matthew W. Edwards
    tmundiya@willkie.com
    787 Seventh Avenue
    New York, NY 10019-6099
    (212) 728-8000 (telephone)
    (212) 728-8111 (facsimile)

*Attorneys for Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, P Monarch Recovery Ltd., and Roger Schmitz*