**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

F5 CAPITAL, A CAYMAN ISLANDS
CORPORATION,

                Plaintiff

        v.

PETROS PAPPAS, *et al.*,

                Defendants

        and

STAR BULK CARRIERS CORP.,

              Nominal Defendant

No. 14-cv-09356 (AT) (MHD)

Oral Argument Requested

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO MONARCH DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION**

Dated:  April 17, 2015

Mark C. Rifkin
Benjamin Y. Kaufman
Lydia Keaney Reynolds
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Ave.
10th Floor
New York, NY  10016
(212) 545-4600

*Attorneys for Plaintiff F5 Capital*

**TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND.............................................................................................2

LEGAL ARGUMENT ......................................................................................................4

I.    PLAINTIFF HAS SUFFICIENTLY ALLEGED AIDING AND
      ABETTING AGAINST MONARCH ....................................................................4

      A.    Monarch Unquestionably Knowingly Participated in the Oceanbulk Merger ........7

      B.    Monarch Also Knowingly Participated in the Excel Transaction .........................8

      C.    Monarch Knowingly Participated in the Illicit Service Contracts.......................10

II.   PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR DILUTION
      AGAINST MONARCH .........................................................................................10

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                            **Page(s)**

*ATSI Communications Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87, 98 (2d Cir. 2007) ...............................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................4

*Financial Guaranty Insurance Co. v. Putnam Advisory Co.*,
    No. 14-1673-cv, 2015 U.S. App. LEXIS 6161 (2d Cir. Apr. 15, 2015) ...............................9, 12

*Flood v. Carlson Restaurants, Inc.*,
    No. 14 Civ. 2740 (AT), 2015 U.S. Dist. LEXIS 40170 (S.D.N.Y. Mar. 27, 2015).....................4

*Gatz v. Ponsoldt*,
    925 A.2d 1265 (Del. 2007)......................................................................................7, 11

*Gentile v. Rossette*,
    906 A.2d 91 (Del. 2006).............................................................................................11

*Jackson National Life Insurance Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) .....................................................................................6

*Lee v. Pincus*,
    C.A. No. 8458-CB, 2014 Del. Ch. LEXIS 229 (Del. Ch. Nov. 14, 2014) .................................8

*Malpiede v. Townson*,
     780 A.2d 1075 (Del. 2001) .....................................................................................6, 10

*In re Rural Metro Corp. Stockholders Litig.*,
    88 A.3d 54 (Del. Ch. 2014) .................................................................................5, 6, 10

*In re Telecommunications Inc. Shareholders Litigation*,
    C.A. No. 16470-NC, 2003 Del. Ch. LEXIS 78 (Del. Ch. July 7, 2003) ....................................8

*In re Tri-Star Pictures*,
    634 A.2d 319 (Del. 1993)................................................................................... 10, 11

**STATUTES & RULES**

Federal Rules of Civil Procedure
    12(b)(6)..................................................................................................................4

Plaintiff, F5 Capital, by and through its attorneys, hereby submits this Memorandum of Law in Opposition to the Monarch Defendants'[1] Motion to Dismiss Plaintiff's Second and Fourth Causes of Action ("Monarch's Brief").

## INTRODUCTION

Monarch moves to dismiss Plaintiff's causes of action against it for (1) aiding and abetting the Individual Defendants'[2] breaches of fiduciary duty and (2) dilution of Plaintiff's and the Unaffiliated Shareholders interest in Nominal Defendant Star Bulk Carriers Corp. ("Star Bulk"). Monarch's Brief raises far more questions than it answers, thereby highlighting the fact that dismissal of Plaintiff's claims is inappropriate at this pre-discovery stage of the litigation. In fact, Monarch's Brief counsels discovery, not dismissal, as it fails to explain why an insider such as Monarch not only agreed to a merger between Star Bulk and Oceanbulk Carriers LLC ("Oceanbulk") that cut Monarch's share of Star Bulk by three-quarters, from 28.1% to just 7.4%, but actually *concocted* and *promoted* the merger through its managing principal, Defendant Roger Schmitz, Monarch's hand-picked designee on Star Bulk's Board of Directors and one of only two members of a purportedly "independent" special committee charged with determining whether the merger was fair to Star Bulk's shareholders.

The answer to that question requires nothing more than common sense: no company

---

[1] The Monarch Defendants are Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Limited, Monarch Capital Master Partners II-A L.P., Monarch Capital Master II LP, Monarch Debt Recovery Master Fund Limited, Monarch Opportunities Master Fund Limited, P Monarchy Recovery Limited (collectively "Monarch"), and Roger Schmitz ("Schmitz"), a managing principal of Monarch and a member of the Star Bulk Board of Directors. *See* Compl. ¶¶ 34-40.

[2] The Individual Defendants, all of whom are members of Star Bulk's Board of Directors (the "Board"), are: Petros Pappas ("Pappas"), Milena Maria Pappas ("Milena Pappas"), Roger Schmitz ("Schmitz"), Tom Softland ("Softland"), Spyros Capralos ("Capralos"), Koert Erherdt ("Erherdt"), Renee Kemp ("Kemp"), Rajath Sourie ("Sourie"), Emily Stephens ("Stephens"), and Stelios Zavvos ("Zavvos"). *See* Compl. ¶¶ 13-24.

would give up something (much less close to everything) in exchange for nothing.  Monarch was compensated for its vote in favor of the merger in some manner, including (i) its inclusion in the group that became the outright controlling shareholders of Star Bulk, leaving the minority shareholders such as Plaintiff and the Class in the cold and at the controlling shareholders' mercy, and (ii) its participation in a substantial financing transaction earning sizeable returns for itself.  For the reasons stated below the Court should deny Monarch's motion.

## FACTUAL BACKGROUND

Plaintiff has provided a general overview of the pertinent facts in this matter in its concurrently filed Opposition to All Defendants Motion to Dismiss, so here only briefly reiterates the facts pertinent to Monarch's Brief.

Monarch attempts, like a parlor magician, to portray itself as independent from, and unrelated to, the Oaktree Investors and Pappas Defendants who wrested control of Star Bulk through their self-interested merger with Oceanbulk.  However, as Plaintiff alleges and the facts clearly demonstrate, Monarch was not just an insider to the merger but was its *architect* through Monarch's managing principal, Defendant Schmitz, who was hand-picked by Monarch to sit on Star Bulk's Board and operated at Monarch's behest.  Compl. ¶¶ 68-69, 71, 79, 127.  Indeed, solely as a result of the Oceanbulk Merger, Monarch, along with the Oaktree Investors, the Pappas Defendants and their affiliated entities (collectively the "Other Controlling Shareholders"), have increased their combined ownership of the outstanding shares of Star Bulk from just 43.9% pre-merger to a whopping super-majority 80.2% post-merger.  Compl. ¶ 3.

Prior to the merger Monarch owned 20.9% of the outstanding Star Bulk shares representing 28.1% of the shareholders not affiliated with the Other Controlling Shareholders.  Compl. ¶ 53.  The Oceanbulk merger was then approved by the Star Bulk Board after a

recommendation by the Board's "Special Committee" of only two members, one of which, Schmitz, was a managing principal of Monarch. Compl. ¶¶ 53, 69. In fact, the merger was conceived of and first proposed by Schmitz at the behest of Monarch, which made him (and Monarch) as far from disinterested as possible. Compl. ¶¶ 68, 71, 79, 127.

Monarch also entered into a voting agreement in principle with some of the Oaktree Investors and Pappas Defendants to vote all of their Star Bulk shares in favor of the merger two months before any fairness opinion had been issued, with the agreement being a prerequisite for the merger to be approved. Compl. ¶¶ 73-74. The practical effect of the Voting Agreement was that Monarch and the Other Controlling Shareholders were fully interested in the transaction long before the Board approved it. Compl. ¶ 73. Plaintiff's allegation that Monarch agreed to have its percentage ownership of Star Bulk reduced to just 7.4% by the merger gives rise to a strong presumption that Monarch received compensation or other benefits in exchange for agreeing to the merger, including through the various other economic arrangements Monarch has with the Other Controlling Shareholders, since there was no other reason for Monarch to allow its percentage ownership to be cut. Compl. ¶¶ 65, 74-77.

Monarch also participated in self-dealing through Star Bulk's plan to purchase 34 drybulk vessels from the bankrupt Excel Maritime Carriers Ltd. ("Excel"). As detailed in the complaint, this transaction (the "Excel Transaction") was merely another self-interested arrangement benefitting Defendants to the detriment of other shareholders of Star Bulk stock. Compl. ¶¶ 96-104. Plaintiff has alleged that entities affiliated with Monarch and the Other Controlling Shareholders loaned Star Bulk $213 million through a Senior Secured Credit Agreement ("SSCA") to purchase the Excel ships, with the ships as collateral. Compl. ¶¶ 103-04.

Finally, as a member of the group who controlled Star Bulk after the Oceanbulk Merger,

Monarch had a fiduciary duty not to sanction the further dilution of shares owned by Plaintiff and the other Unaffiliated Shareholders.  In breach of that duty, Monarch, through Schmitz, its representative on the Board, allowed Star Bulk to be used as an ATM machine by entering into ship maintenance contracts with entities affiliated with the Pappas Defendants at grossly inflated rates, with a percentage of this revenue going directly to Defendant Pappas.  Compl. ¶¶ 105-07.

## LEGAL ARGUMENT

### I.   PLAINTIFF HAS SUFFICIENTLY ALLEGED AIDING AND ABETTING AGAINST MONARCH

Monarch's rebuttal to the charge that it aided and abetted the Individual Defendants' breaches of fiduciary duty in the three transactions at issue is essentially that Plaintiff's allegations amount to "speculation heaped upon speculation."  Monarch Brief at 3.  But the Complaint clearly alleges more than mere speculation, and in any event, Monarch over-inflates Plaintiff's pleading burden.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant."  *Flood v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2015 U.S. Dist. LEXIS 40170, at *19 (S.D.N.Y. Mar. 27, 2015) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  To survive a motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard is not akin to a "probability requirement," but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 556.  A complaint "'does not need detailed factual allegations' to withstand a Rule 12(b)(6) motion to dismiss."  *Flood*, 2015 U.S. Dist. LEXIS 40170, at *28 (quoting *Twombly*, 550 U.S. at 555).

4

Under well settled Delaware law (which the parties agree applies), a claim for aiding and abetting a breach of fiduciary duty consists of four elements:  "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in the breach by the non-fiduciary defendants, and (iv) damages proximately caused by the breach." *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 80 (Del. Ch. 2014) (citation omitted).

Monarch makes no argument with respect to the first and fourth elements of the claim, thereby conceding (1) the Individual Defendants' fiduciary status and (2) that Plaintiff and the Unaffiliated Shareholders' alleged damages were proximately caused by the alleged breaches of fiduciary duty.  *See* Monarch Brief at 5-10; *Rural Metro*, 88 A.3d at 80 ("The first element of a sale process claim for aiding and abetting is readily satisfied.  The individual defendants were directors of a Delaware corporation.  In that capacity, they were fiduciaries who owed duties of loyalty and care.") (citations omitted).

Monarch also fails to make any substantive, non-conclusory challenge to the second element of the aiding and abetting claim: a breach of fiduciary duty.[3]  Significantly, none of the other Defendants deny the merits of Plaintiff's breach of fiduciary duty claim through their own motions to dismiss, instead raising only technical objections to the claim:  (1) Plaintiff failed to make a pre-suit demand on the Individual Defendants, which was purportedly not futile under Delaware law; (2) the Court purportedly lacks personal jurisdiction over certain defendants; and (3) certain defendants allegedly received insufficient service of process.  Putting aside

_____

[3] The sum total of Monarch's arguments regarding the merits of Plaintiff's breach of fiduciary duty claim is (1) footnote one of their brief, in which Monarch cursorily argues that Plaintiff has not adequately alleged breach of fiduciary duty against *Schmitz*, Monarch's employee, *see* MTD at 1 n.1, and (2) their flat assertion, without any specificity, that "the Complaint does not sufficiently allege that the Director Defendants breached their fiduciary duties in connection with either the Oceanbulk Merger or the Excel Transaction . . ." *Id.* at 8.  Putting aside the fact that Plaintiff alleged that multiple Individual Defendants, and not just Schmitz, breached their fiduciary duty, Monarch's passing whisper of an argument is utterly insufficient to rebut Plaintiff's extensive pleadings to the contrary.

Monarch's failure to challenge the merits of Plaintiff's first cause of action, Plaintiff has more than plausibly alleged that the Individual Defendants breached their fiduciary duties by approving the three transactions which were entered into for the benefit of the Defendants and to the detriment of Star Bulk and its Unaffiliated Shareholders, which wasted hundreds of millions of dollars of Star Bulk's assets and also resulted in an enormous dilution of Plaintiff's and the Unaffiliated Shareholders' interest in Star Bulk. *See* Compl. ¶¶ 86-90, 104, 106-07.  In turn, Plaintiff has also sufficiently alleged that Monarch knowingly participated in the Individual Defendants' breaches of fiduciary duty.

Under Delaware law, knowing participation is satisfied where the defendant acted "'with the knowledge that the conduct advocated or assisted constitutes such a breach [of fiduciary duty].'" *Rural Metro*, 88 A.3d at 97 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001)).  This can be demonstrated in a variety of ways, such as where the defendant "purposely induced" the breach or, "for improper motives of its own, misleads the directors into breaching their duty of care." *Id.* at 97, 99.[4]  While a plaintiff must allege the defendant's knowledge of the breach, such knowledge need not be pled with particularity, but instead (unlike fraud) the knowledge may be alleged generally. *See Jackson*, 741 A.2d at 391 ("claim of knowing participation need **not** be pleaded with particularity") (emphasis added).

---

[4] Monarch understandably ignores these other manners in which knowing participation can be demonstrated, instead incorrectly arguing that knowing participation can *only* be found where the breach complained of was "inherently wrongful." Monarch Brief at 6-7 (citations omitted).  This is not a requirement for a finding of knowing participation but is instead a prerequisite where a Court must "infer" a defendant's knowing participation. *See Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 392 (Del. Ch. 1999) (a "court can infer a non-fiduciary's knowing participation only if a fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff alleges specific facts from which that court could reasonably infer knowledge of the breach.") (internal quotations omitted).  Here the Court has no need to resort to any inferences in light of the clear factual pleadings of Monarch's involvement in and knowledge of the breaches.  And in any event, there is little doubt that the breaches of fiduciary duty complained of by Plaintiff *were* in fact "inherently wrongful" in that these acts of self-dealing by the controlling shareholders and their lackeys on the Star Bulk Board decimated the holdings of Plaintiff and the Unaffiliated Shareholders, and in the case of the Oceanbulk merger, was designed to do so.  Compl. ¶ 55.

6

### A.   Monarch Unquestionably Knowingly Participated in the Oceanbulk Merger

There is no question that Monarch knowingly acted to effectuate the Individual Defendants' breaches of fiduciary duty through the Oceanbulk Merger.  In fact, acting through its managing partner Schmitz who sat on the Star Bulk Board and the Board's two-person Special Committee, Monarch concocted and then promoted the merger that diluted Plaintiff's and the Unaffiliated Shareholders' holdings in the company while surely providing Monarch a quid pro quo for their own assent to the combination.  Compl. ¶¶ 74-77.

Monarch's argument that it cannot be held liable for aiding and abetting the Oceanbulk Merger because it was "merely exercising its right to vote in favor of the transaction" is preposterous.  Monarch Brief at 7.  This argument recasts and misconstrues the facts surrounding the merger, where Monarch's own managing principal, Schmitz, crafted and pushed through the merger, and despite surrendering three-quarters of its own percentage ownership of Star Bulk, Monarch illogically (and incredibly) insists it gave up that ownership in exchange for . . . nothing. Monarch's implausible argument defies common sense, and the facts as a whole more than sufficiently allege that Monarch knowingly participated in the Oceanbulk Merger, which was designed by Schmitz – Monarch's designee on the Board - thereby significantly reducing Plaintiff's and the Unaffiliated Shareholders' ownership of Star Bulk for Defendants' own gain. Compl. ¶¶ 65, 74-77.

This case is fully in line with *Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007).  In *Gatz* the Supreme Court of Delaware held that the plaintiffs had adequately pled that the third-party defendants knowingly participated in a breach of fiduciary duty where, *inter alia*, it was "reasonably inferable that [the third-party defendants] knew that that transaction's effect (if not its intent) was to dilute the stock interest of [the] public shareholders to provide the means for

[the third-party defendants] to obtain absolute majority control." *Id.* at 1276.  Here, as the

employer and promoter of Schmitz, the proponent of the Oceanbulk Merger, Monarch had no

doubt about how the merger would provide them and the Other Controlling Shareholders a

majority controlling interest in Star Bulk while all the Unaffiliated Shareholders (*i.e.*, Plaintiff

and the Class) would have their percentage ownership of the company devastated. *See In re*

*Telecomms., Inc. S'holders Litig.*, C.A. No. 16470-NC, 2003 Del. Ch. LEXIS 78, at \*11-12 (Del.

Ch. July 7, 2003) ("When the allegations of breach are based upon the specifics of the terms of

the merger agreement, the more outrageous those terms are, the less plausible it becomes for a

merger partner accused of aiding and abetting to assert that its participation was not

"knowing.'").[5]

### B.      Monarch Also Knowingly Participated in the Excel Transaction

Plaintiff has pled more than sufficient facts to plausibly allege Monarch's knowing

participation in the Board's breach of fiduciary duty through the Excel Transaction, including

that various entities affiliated with Monarch, along with entities affiliated with the Other

Controlling Shareholders, loaned Star Bulk $213 million to purchase the Excel ships, using the

---

[5] Cases relied upon by Monarch on this score are entirely misplaced. *See* MTD at 7-8.  For example, *Lee v. Pincus*, C.A. No. 8458-CB, 2014 Del. Ch. LEXIS 229 (Del. Ch. Nov. 14, 2014), involved claims of aiding and abetting against underwriters who consented to the waiver of lockup restrictions on the post-IPO sale of shares for some, but not all, shareholders and directors.  The court held that knowing participation had not been adequately pled as the underwriters were not aware that such action would facilitate a breach of fiduciary duty, and because the fees the underwriters received in connection with a later secondary offering of shares were not unreasonable. *Id.* at \*42-46.  And in *Telecomms.*, 2003 Del. Ch. LEXIS 78, the court dismissed the plaintiff's aiding and abetting claim against AT&T, the partner to a merger in which some of the counterparty's shareholders and board members would receive only 10% more in consideration for their shares depending on their class.  The court held that the facts alleged were insufficient to show that AT&T knowingly participated in a breach of fiduciary duty through the merger because "a 10% difference in consideration between two classes of shareholders that are each receiving upwards of a 40% premium on the trading price of their shares . . . is not so grossly excessive that without more it leads to an inference that the difference was intended as an inducement to ignore fiduciary duties." *Id.* at \*14.

ships as collateral.  Compl. ¶¶ 103-04.

Monarch's rebuttal here is a factual denial that *Monarch* had involvement with the transaction because neither the credit agreement nor the press release announcing the transaction included "any mention of Monarch."  MTD at 4-5, 9.  As an initial matter, Plaintiff has not alleged that Monarch itself was a direct participant in the SSCA, but instead that entities *affiliated* with Monarch entered into the SSCA, a distinction Monarch obfuscates by rebutting an argument Plaintiff does not make.  Compl. ¶¶ 103-04.  And Monarch's argument that Plaintiff's argument is "merely a guess" is rich, considering that Schedule I of the SSCA, which defines the "Initial Lenders" in the Excel Transaction, was not filed with the SEC and is not otherwise publically available.  Compl. ¶ 103.  Monarch merely offers its own self-serving *ipse dixit* that the SSCA "omit[s] any mention of Monarch," without providing the missing Schedule I to Plaintiff or the Court.

Plaintiff's pleading of Monarch's investor relationship in the Excel transaction is sufficient at the motion to dismiss stage.  To the extent Monarch argues that the Court should take *its word* that the facts are otherwise, its argument merely creates a fact dispute that cannot be resolved on a motion to dismiss at this pleading stage.  *See Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, No. 14-1673-cv, 2015 U.S. App. LEXIS 6161, at *22 (2d Cir. Apr. 15, 2015) (whether there was financial incentive to commit fraud is "inappropriate for resolution on a motion to dismiss").

Monarch also argues that Plaintiff does not specifically allege that "any term of the Excel Transaction was unfair."  Monarch Brief at 9.  In fact, Plaintiff clearly spells out the self-serving nature of the transaction: to improve their position in Excel's bankruptcy Defendants and their affiliates loaned Star Bulk (which they controlled) $213 million to purchase 34 ships from the

9

bankrupt Excel (in which they hold the majority of outstanding debt and equity), using the ships as collateral.  Compl.  ¶¶ 101-04.  As a partner in the scheme through both the Board's approval of the Excel Transaction and the participation of its affiliates' in the SSCA, Monarch cannot seriously deny it was a knowledgeable participant, much less a beneficiary.  *See Rural Metro*, 88 A.3d at 97.

### C.    <u>Monarch Knowingly Participated in the Illicit Service Contracts</u>

Monarch also was a knowing participant in the entering into of egregiously unfair ship maintenance contracts with entities affiliated with the Pappas Defendants.  Compl. ¶¶ 105-07.  In pursuing control of Star Bulk and then improperly taking over the company through the Oceanbulk merger Monarch and the Other Controlling Shareholders obtained a fiduciary duty to all shareholders of Star Bulk.  *See In re Tri-Star Pictures*, 634 A.2d 319, 328 (Del. 1993) ("Coca-Cola, although not a majority shareholder, affirmatively attempted to dictate the destiny of Tri-Star.  It therefore assumed a fiduciary duty to all Tri-Star shareholders.").  Part and parcel of this was a duty not to allow the company to enter into agreements that were grossly inequitable.  Despite this duty, Monarch and (or through) Schmitz allowed Star Bulk to enter into ship maintenance contracts with entities affiliated with the Pappas Defendants at grossly inflated rates, with a percentage of this revenue going, on information and belief, directly to Defendant Pappas.  Accordingly, there is no question that in doing so Monarch acted "with the knowledge that the conduct advocated or assisted constitutes such a breach [of fiduciary duty].'" *Rural Metro*, 88 A.3d at 97 (quoting *Malpiede*, 780 A.2d at 1097).

### II.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR DILUTION AGAINST MONARCH

Finally, Monarch argues, in a single paragraph, that Plaintiff's claim against it for dilution should be dismissed because Monarch's share of Star Bulk actually decreased following

the merger. *See* Monarch Brief at 10. Monarch relies solely on its misreading of a single case, *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), which it claims requires a dilution claim to include "an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." Monarch Brief at 10 (quoting *Gentile*, 906 A.2d at 100) (emphasis omitted).

As an initial matter, Delaware law does not require that ***each defendant*** be a shareholder whose own individual holdings increased – or even be a shareholder at all. To the contrary, under Delaware law, a dilution claim may stand "in a direct claim against the controlling stockholder ***and any other fiduciary responsible for the harm***." *Gentile*, 906 A.2d at 101 (citing *Tri-Star Pictures*, 634 A.2d 319). Monarch became a fiduciary when it sought to gain majority control of Star Bulk with the Other Controlling Shareholders. *See Tri-Star Pictures*, 634 A.2d at 328.

And, in any event, Plaintiff has alleged that Monarch and the Other Controlling Shareholders, operating ***together*** as a group, increased their ***collective*** percentage of the outstanding shares from 43.9% (less than a majority) to 80.2% (a super-majority giving the group outright control of Star Bulk). Compl. ¶ 3. Under Delaware law cited by Monarch, the controlling shareholders, for purposes of determining aiding and abetting liability, can include a group of shareholders working in concert and those who have "majority *or effective* control." *Gentile*, 906 A.2d at 101 (describing "controlling shareholders" in dilution case *Tri-Star* as "Coca-Cola ***and the group of other stockholders with which Coca-Cola customarily voted as a bloc***") (emphasis added).

The Court must look to the alleged "true substantive effect" of a given transaction to determine whether a dilution claim falls within the *Gentile*/*Tri-Star* paradigm. *Gatz*, 925 A.2d at

11

1279.  Here, Plaintiff alleges that Monarch was in league with the Other Controlling Shareholders in promoting and effectuating the Oceanbulk Merger, which transferred outright control to Monarch and the rest of the affiliated shareholder group, leaving no question that Monarch was and is one of Star Bulk's "controlling shareholders." *See* Compl. ¶¶ 71-77.  Any argument that Monarch might make that it was not acting as a controlling shareholder during and after the merger conflicts with the facts alleged in the Complaint, which must be taken as true at this stage, and amounts to a dispute appropriate for the trier of fact. *See Fin. Guar. Ins. Co.*, 2015 U.S. App. LEXIS 6161, at \*22.

Moreover, as described in detail above, Monarch's interest was not "reduced in the same proportion as F5's." MTD at 10.  Instead, Monarch, unlike F5 and the class, benefitted from the merger it created and promoted by (1) becoming a member of the controlling group of shareholders and (2) likely receiving additional compensation and/or opportunities in exchange for Monarch's agreement to the merger. *See* Compl. ¶¶ 3, 65, 68-69, 71-77, 79, 127. Accordingly the Court should uphold Plaintiff's fourth cause of action against Monarch.[6]

---

[6] In the event this Court ultimately dismisses Plaintiff's Complaint, or any claim therein, Plaintiff reserves its right to amend the Complaint pursuant to Fed. R. Civ. P. 15.

**CONCLUSION**

For all these reasons, the Court should deny Monarch's motion to dismiss Plaintiff's

Second and Fourth causes of action and allow this case to proceed on the merits.

Dated:  April 17, 2015                                    Respectfully submitted,

                                                          /s/ Mark C. Rifkin
                                                          Mark C. Rifkin
                                                          Benjamin Y. Kaufman
                                                          Lydia Keaney Reynolds
                                                          WOLF HALDENSTEIN ADLER
                                                          FREEMAN & HERZ LLP
                                                          270 Madison Ave., 10th Floor
                                                          New York, NY 10016
                                                          (212) 545-4600

                                                          *Attorneys for Plaintiff F5 Capital*

## CERTIFICATE OF SERVICE

I, Mark C. Rifkin, hereby certify that on April 17, 2015, copies of the foregoing Plaintiff's Memorandum of Law in Opposition to Monarch Defendants' Motion to Dismiss Plaintiff's Second and Fourth Causes of Action were filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

/s/ Mark C. Rifkin
Mark C. Rifkin

/778871

14