UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

F5 CAPITAL, A CAYMAN ISLANDS CORPORATION

            Plaintiff,

-against-

PETROS PAPPAS, *et al.*,

            Defendants

-and-

STAR BULK CARRIERS CORP.,

            Nominal Defendant.

No. 14-cv-09356 (AT)(MHD)

Oral Argument Requested

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE MONARCH DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION**

DATED: May 8, 2015

WILLKIE FARR & GALLAGHER, LLP
Tariq Mundiya
Matthew W. Edwards
tmundiya@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 (telephone)
(212) 728-8111 (facsimile)

*Attorneys for Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, P Monarch Recovery Ltd., and Roger Schmitz*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.     F5'S AIDING AND ABETTING CLAIM IS PURELY SPECULATIVE. ........................3

       A.     Oceanbulk Merger ...........................................................................................4

       B.     Excel Transaction.............................................................................................8

       C.     The Service Contracts ......................................................................................9

II.    F5'S DILUTION CLAIM AGAINST MONARCH MUST BE DISMISSED. .................11

CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143 (2d Cir. 2009) ...........................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................5, 6, 10

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993). .......................................................5

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ............................................5

*Dubroff v. Wren Holdings*, C.A. No. 3940-VCN, 2009 WL 1478697
    (Del. Ch. May 22, 2009) ......................................................................................................10, 11

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013)..............................................................5

*Fowler v. Fischer*, No. 13-cv-6262, 2014 WL 4058218 (S.D.N.Y. Aug. 14, 2014). ......................8

*Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007)...........................................................................6, 7

*Genna v. Sallie Mae, Inc.*, No. 11 Civ. 7371(LBS), 2012 WL 1339482
    (S.D.N.Y. Apr. 17, 2012)............................................................................................................5

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010)...............................................6

*James v. Bush*, 574 Fed. Appx. 20 (2d Cir. 2014). .......................................................................8

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197
    (S.D.N.Y. 2013).........................................................................................................................10

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001)....................................................................3, 7

Monroe Cnty. Emps.' Ret. Sys. v. Carlson, No. 4587-CC, 2010 WL 2376890
    (Del. Ch. June 7, 2010) ..............................................................................................................9

*Pimental v. Wachovia Morg. Corp.*, 411 F. Supp. 2d 32 (D. Mass. 2006)................................4, 5

*In re Kenneth Cole Prods., Inc.*, 2014 App. Div. LEXIS 8037
    (1st Dep't Nov. 20, 2014) .........................................................................................................12

*In re Rural Metro Corp.*, 88 A.3d 54 (Del. Ch. 2014)................................................................7, 8

*In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367 (D.N.J. 2010). ...............................................6

*In re Telecomm., Inc. Shareholders Litig.*, No. Civ.A. 16470-NC,
    2003 WL 21543427 (Del. Ch. Jul. 7, 2003).............................................................................3

*In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del. 1993)................................................10, 11

**STATUTES & RULES**

Fed. R. Civ. P. 11 ................................................................................................................9

**INTRODUCTION**

Plaintiff F5's opposition brief confirms that its claims against Monarch have no factual basis.[1] The only genuine question raised by F5's opposition is the investigation (if any) F5 performed before filing a pleading and prosecuting an action, and whether such investigation met the standard required by Rule 11 of the Federal Rules of Civil Procedure. This Court should not aid Nobu Su, a serial litigant who is acting through his special purpose vehicle F5, in his quest to obtain leverage in separate business disputes having nothing to do with the sham litigation he has instituted here.

It is undisputed that F5's claim against Monarch for aiding and abetting the directors' alleged breach of fiduciary duty turns on whether F5 has adequately, non-conclusorily, and sufficiently under the teachings of the United States Supreme Court in *Twombly* and *Iqbal*, alleged that Monarch *participated* in the relevant transactions *with the knowledge* that they were, in fact, unfair and constituted a breach of fiduciary duty. The Complaint does no such thing. The Complaint does not allege, and could not have alleged, any facts (apart from conclusory and speculative assertions) showing that Monarch had any such knowledge, or that the mere act of agreeing to vote as a shareholder in favor of a transaction was tantamount to participating in a breach of the directors' fiduciary duties. Instead, F5 relies upon inferences and speculation.

The lone fact used by F5 as grounds for its aiding and abetting claim is that Monarch agreed to vote in favor of the Oceanbulk Merger. From there, F5 asserts, without foundation or

---

[1] "Monarch" includes Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, and P Monarch Recovery Ltd. Other proper names and defined terms in this brief, including the so-called "Oceanbulk Merger," "Excel Transaction," and "Service Contracts," also are the same as they appear in Monarch's opening brief. Monarch and Defendant Roger Schmitz also join in the arguments set forth in the Reply Memorandum of Law in Further support of Defendants' Joint Motion to Dismiss, which is also being filed today.

1

support, that Monarch knew the Oceanbulk Merger was unfair and must have voted in favor of it because, F5 imagines, Monarch was invited to participate in (1) a profitable financing agreement in respect of an unrelated transaction, and (2) a block of shareholders who purportedly control Star Bulk. F5 Opp. at 2. F5 does not, because it cannot, allege any facts showing that Monarch participated (or was invited to participate) in any such financing agreement, or that Monarch has participated (or was invited to participate) in any supposed block of shareholders.

Monarch demonstrated in its opening brief that F5's allegations are, in their best light, pure speculation based on F5's own "[p]resum[ption]" that Monarch "*may* expect to reap some undisclosed benefit" in exchange for agreeing to vote in favor of the Oceanbulk Merger. Monarch Mot. at 4 (quoting Compl. ¶ 74). F5's latest brief only confirms that its sole basis for the allegations is its own supposed disbelief that Monarch would vote in the same manner as a wide margin of unaffiliated shareholders with respect to the Oceanbulk Merger. F5 does not dispute, however, that the U.S. Supreme Court deemed the same kind of analysis impermissibly conclusory and speculative in its *Twombly* decision. Further, as demonstrated below, F5's reasoning is impermissibly circular, as F5 merely *assumes* the fact of Monarch's knowledge of some unfairness or fiduciary duty breach as support for its allegation that Monarch would have required a "bribe" in exchange for supporting the Oceanbulk Merger. Indeed, F5 cannot rebut the fact that Monarch exercised its votes in the same manner as the vast majority of other Star Bulk shareholders in approving the Oceanbulk Merger, and received precisely the same treatment as the other holders. The aiding and abetting claim against Monarch must be dismissed.

Regarding dilution, F5 does not dispute that in the Oceanbulk Merger, Monarch's proportional ownership of Star Bulk *decreased* the same as F5's, and the same as all the other unaffiliated shareholders. Such a decrease is part and parcel of any strategic transaction in which

2

stock is the consideration. To try to salvage its claim against Monarch, F5 belatedly asserts a theory that does not appear in the Complaint, to wit, that Monarch owed a fiduciary duty to F5. As demonstrated below, neither the Complaint nor the case law cited by F5 supports this new theory, pled by afterthought, and that claim should be dismissed as well.

## ARGUMENT

**I.     F5'S AIDING AND ABETTING CLAIM IS PURELY SPECULATIVE.**

In a corporate transaction case such as this, regardless of whether the *board of directors* has breached its duty of loyalty or duty of care to the shareholders, aiding and abetting claims still must be dismissed unless the plaintiff satisfies the "stringent" standard of alleging "knowing participation in the breach by the non-fiduciary defendants," or scienter. *E.g.*, *Lee v. Pincus*, C.A. No. 8458-CB, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014) (dismissing aiding and abetting claim even assuming "it is reasonably conceivable that" the board breached its fiduciary duties); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (aiding and abetting claim dismissed even "assum[ing] . . . the board's conduct was grossly negligent and . . . breach[ed] of its duty of care"). Among other ways, "knowing participation may be inferred where the terms of the transaction are so egregious or the magnitude of side deals is so excessive as to be inherently wrongful." *Lee*, 2014 WL 6066108, at *13; *In re Telecomm., Inc. Shareholders Litig.*, No. Civ.A. 16470-NC, 2003 WL 21543427, at *2 (Del. Ch. Jul. 7, 2003).[2] F5 makes allegations concerning three transactions in this litigation—the Oceanbulk Merger, the Excel Transaction and the Service Contracts—but no claim against Monarch survives with respect to any of them.

---

[2]     F5's argument that there are "other manners in which knowing participation can be demonstrated" (F5 Opp. at 6 & n.4) is academic here, as F5 focuses only on the propriety of the transactions and side deals that F5 imagines Monarch must have entered. F5 Opp. at 2.

3

### A. Oceanbulk Merger

Monarch is targeted by the aiding and abetting claim because it entered a voting agreement in support of the Oceanbulk Merger. Compl. ¶ 73. F5 complains that Star Bulk's board of directors caused Star Bulk to pay too high a price to acquire Oceanbulk; that they did so in order to provide a windfall to certain other defendants holding interests in Oceanbulk; and that the unaffiliated shareholders were injured by this alleged deliberate overpayment. Compl. ¶ 2.

Even assuming these allegations are true (and they are not), they provide no basis to conclude that Monarch knew that the Oceanbulk Merger was unfair to the shareholders or was otherwise the product of a breach of fiduciary duty. For example, the Complaint does not allege that Monarch held any interest in Oceanbulk (because it did not), so Monarch would not have benefited from the alleged overpayment for Oceanbulk. The merger had the same impact on Monarch's proportional ownership of Star Bulk as it had on the other unaffiliated shareholders' proportional ownership, so any alleged unfairness would impact Monarch in the same proportion. Compl. ¶¶ 65-66.[3] F5 also admits that Monarch's voting agreement did not provide any special "consideration . . . to Monarch in exchange for the Voting Agreement." Compl. ¶ 74. Nor does F5 dispute that voting agreements are perfectly legal and routinely upheld under Delaware law. Monarch Mot. at 7 (collecting cases). Financially speaking, Monarch was in the same boat as F5 and the other shareholders such that, if the Oceanbulk Merger *were* unfair to the unaffiliated shareholders, then Monarch would be injured, too. It thus makes no sense to conclude that Monarch knew the Oceanbulk Merger was unfair when Monarch agreed to support it. It is simply not reasonable to infer, as F5 asks the Court to do, that Monarch acted against its own economic interest. *E.g.*, *Pimental v. Wachovia Morg. Corp.*, 411 F. Supp. 2d 32, 39 (D.

---

[3] F5's and Monarch's proportional ownership of Star Bulk both declined by about 65%, or from 1.4% to .49% and from 21% to 7.4%, respectively. Compl. ¶¶ 65-66.

Mass. 2006) (allegation that defendant bank "knowingly" disbursed funds to pay for shoddy construction work was a "speculative[] and . . . unreasonable inference[]" where doing so would have harmed bank's "own interest" in mortgage collateral). At the same time, the Complaint acknowledges substantial value received as a result of the Oceanbulk Merger, including ships, economies of scale, etc. Compl. ¶ 53. Thus, if anything, the only reasonable inference supported by the Complaint is that Monarch believed the Oceanbulk Merger would provide fair value to Star Bulk's shareholders like itself. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (inquiry under *Twombly* and *Iqbal* permits court to consider "alternative explanations so obvious that they render plaintiff's inferences unreasonable"). Monarch was not alone: "[A]n overwhelming majority of the shareholders voted to approve" the Oceanbulk Merger.[4]

F5 nevertheless insists that "surely" Monarch was provided "a quid pro quo for [its] assent to the combination." F5 Opp. at 7. F5 previously has admitted that this is speculation based on F5's "[p]resum[ption]" that Monarch "*may* expect to reap some undisclosed benefit" from the deal. Compl. ¶ 74 (emphasis added). F5's brief confirms that its only support for this assertion is its own disbelief that Monarch "gave up [its] ownership in exchange for . . . nothing." F5 Opp. at 7 (ellipses in original); F5 Opp. at 1-2 ("no company would give up something . . . in exchange for nothing"). Each of two considerations is fatal to this speculation.

First, F5 does not deny that the Supreme Court's decision in *Twombly* rejected speculative allegations just like this one. Monarch Mot. at 9. In *Twombly*, the question was whether the defendant's "conduct stem[med] from [an] independent decision or from an

---

[4] Ex. 2 to Mundiya Dec. (Exhibit 99.1 to Star Bulk Carrier Corp.'s SEC Form 6-K dated July 15, 2014). On a motion to dismiss, the Court may take judicial notice of documents that are included in Star Bulk's SEC Filings and/or incorporated by reference in the Complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Genna v. Sallie Mae, Inc.*, No. 11 Civ. 7371(LBS), 2012 WL 1339482, at *2 (S.D.N.Y. Apr. 17, 2012) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

agreement, tacit or express," to engage in wrongful behavior, as opposed to an ordinary business motivation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). The Court held that the plaintiff's claim was not "plausible," because the defendant's conduct was at least "as much in line with a wide swath of rational . . . business strategy" as any improper motivation. *Id.* at 554. So too here. By acknowledging the many benefits of the transaction (Compl. ¶ 53), the Complaint provides ample explanation for why Monarch would support the Oceanbulk Merger based on a rational business strategy. F5's assertion that something sinister was afoot is thus impermissible speculation under *Twombly*. The Supreme Court affirmed dismissal of the complaint in *Twombly*, 550 U.S. at 547, and that precedent applies equally here.

Second, F5's argument is impermissibly circular. Its assertion that Monarch would not enter an allegedly unfair deal without being compensated *assumes* that Monarch *knew* the transaction would be unfair to shareholders like itself—without that assumption, as stated above, it is perfectly reasonable to infer that Monarch entered the voting agreement simply to secure what it viewed as a good deal for all shareholders. While "knowing participation may be inferred from" side deals, *supra* at 3, F5 gets it backwards. *First* F5 infers the existence of side deals by assuming that Monarch knew the merger was unfair; *then*, based on these hypothetical side deals, F5 infers the very knowledge that it assumed in the first step. "Plaintiffs' argument is facially circular . . . . As such, Plaintiffs' argument cannot pass muster even under the more lenient standard of Rule 8, as interpreted in *Twombly* and *Iqbal*." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 416 (D.N.J. 2010); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010) (affirming dismissal where plaintiff's conclusory allegation "begs the question").

F5's reliance on *Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007) (F5 Opp. at 7-8), backfires because it shows what F5 does not and cannot allege here. In *Gatz*, the question was whether the

6

defendant who was accused of aiding and abetting a breach of fiduciary duty knowingly "cause[d] the corporation to engage in a transaction wherein shares having *more value than what the corporation received in exchange* [were] issued to the" controlling shareholder. *Id.* at 1274 (emphasis added). The court found that one of the conspirators was granted several million shares "for *no* consideration, which shares [the conspirator] then sold back . . . for $1.2 million," and that the "public shareholders received *no* financial or other economic benefit from the" transaction. *Gatz*, 925 A.2d at 1272 (emphasis added). A transaction that cost the company millions of dollars in exchange for "no" value certainly would be "inherently wrongful," such that anyone participating in it could be alleged to have scienter. *See id.* at 1276. But "no" benefit in *Gatz* stands in stark contrast to this case, where the Complaint concedes that the Oceanbulk Merger resulted in value for Star Bulk's shareholders, and fails to specifically allege any benefit that Monarch received as a result of its affirmative vote that was not received by all shareholders. Compl. ¶ 53. Again, F5 may dispute the adequacy of this value, but that is insufficient to satisfy the "stringent" scienter pleading standard against Monarch. *E.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (dismissing aiding and abetting claim even assuming transaction was *unfair*); *Lee v. Pincus*, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014) (same).

Finally, F5 "allege[s] that Monarch knowingly participated in the Oceanbulk Merger" because the merger "was designed by [Roger] Schmitz – Monarch's designee on the Board." F5 Opp. at 7-8. This conflates two distinct concepts. Scienter turns on whether Monarch knew the transaction "constitute[d] . . . a breach" of the directors' fiduciary duties, not whether Monarch knowingly participated *in the transaction*. *Malpiede*, 780 A.2d at 1096-97; *Lee*, 2014 WL 6066108, at *13. Again, F5's case law supports Monarch's point by showing what F5 does not and cannot allege here. In *In re Rural Metro Corp.*, 88 A.3d 54 (Del. Ch. 2014) (cited by F5

7

Opp. at 6), the aiding-and-abetting defendant was the financial advisor who would "only get[] paid" a commission "if the deal happen[ed]." *Id.* at 94. The court found that, to recover its "contingent fee," the defendant induced the board to agree to the deal by "creat[ing] informational gaps that led to the Board's breach of duty" by withholding critical information. *Id.* at 99-100. But in this case, plaintiffs do not and cannot allege that Monarch withheld any information from the directors or shareholders (let alone that it had any information to provide) or that it stood to gain anything by encouraging a merger that would be unfair to itself.

    **B.**    **Excel Transaction**

F5 persists in alleging, without any factual support, that "entities affiliated with Monarch and the Other Controlling Shareholders loaned Star Bulk $213 million through a Senior Secured Credit Agreement ('SSCA') to purchase the Excel ships." F5 Opp. at 3; *see also id.* at 8-9 (same); *id.* at 9 (same); *id.* at 10 (same).[5] Even a cursory investigation of the SSCA demonstrates that no Monarch affiliate is a party to it. For example, each "Lender" has a signature page at the back of the SSCA; these pages identify several "Lender[s]," but no Monarch affiliate is among them.[6] The company's Form 6-K similarly identifies various "lenders" without mentioning any Monarch affiliate.[7] F5's allegation that Monarch *is* a party to the SSCA is thus a flat out fabrication. Such "allegations [that] are pure speculation . . . are not sufficient to state a claim." *Fowler v. Fischer*, No. 13-cv-6262, 2014 WL 4058218, at *2 (S.D.N.Y. Aug. 14, 2014); *see also James v. Bush*, 574 Fed. Appx. 20, 21 (2d Cir. 2014) (dismissing "speculative . . . allegations").

---

[5]    F5's protest that "Plaintiff has not alleged that Monarch itself was a direct participant in the SSCA" (F5 Opp. at 9) rings hollow in light of F5's subsequent assertion that Monarch was a "beneficiary" under the SSCA. F5 Opp. at 9-10. Regardless, documents of which the Court may take judicial notice make clear that no Monarch *affiliate* is a party to the SSCA, either.

[6]    Ex. 4 to Mundiya Dec. (Ex. 99.3 to Star Bulk SEC Form 6-K dated Sept. 3, 2014).

[7]    Ex. 3 to Mundiya Dec. (Star Bulk SEC Form 6-K dated Sept. 3, 2014).

8

F5 may not simply invent facts that have no foundation in order to create a "fact dispute that cannot be resolved on a motion to dismiss." *See* F5 Opp. at 9. F5 tries arguing that, without Schedule I to the SSCA, it cannot confirm that Monarch is *not* a party to the SSCA. F5 Opp. at 9. This ignores that the lenders under the SSCA are also listed elsewhere in the document, as demonstrated above. Moreover, Rule 11 does not permit a party to make allegations just because that party lacks evidence foreclosing those allegations. By presenting this allegation, F5's counsel certified that they had undertaken "an inquiry reasonable under the circumstances" and concluded that this contention "[has] evidentiary *support*" or "[would] *likely* have evidentiary *support* after a reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b)(3) (emphasis added). Given that no Monarch affiliate is named in at least two places identifying who the lenders under the SSCA actually are, it is "objective[ly] unreasonable[]" to allege any evidentiary support for F5's assertion that Monarch is a lender. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 151 (2d Cir. 2009) (issuing Rule 11 sanctions). F5 should, at the right time, be held to account for its false allegation that Monarch is a lender in the Excel Transaction.

Additionally, F5 only alleges that the Excel Transaction was conflicted. F5 Opp. at 9-10. F5's failure to allege that the transaction was not entirely fair is independently fatal to its claim, because even conflicted transactions "are not *per se* invalid under Delaware law." *Monroe Cnty. Emps.' Ret. Sys. v. Carlson,* No. 4587-CC, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) (dismissing breach of fiduciary duty claim).

**C.    The Service Contracts**

F5 does not dispute that the Complaint omits any mention of Monarch in connection with the Service Contracts. Instead, F5 belatedly asserts a new theory that Monarch somehow "obtained a fiduciary duty to all shareholders of Star Bulk" by "taking over the company" with the other defendants. F5 Opp. at 10. The Court should not even consider this new theory, as

9

"Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (granting motion to dismiss).

Moreover, a "control group" cannot be alleged where the complaint shows no "facts demonstrating an agreement or that the Defendants were tied together in some legally significant way" with respect to the transaction alleged to have caused the plaintiff's injury. *Dubroff v. Wren Holdings*, C.A. No. 3940-VCN, 2009 WL 1478697, at *4 (Del. Ch. May 22, 2009) (dismissing claim). Here, other than the Oceanbulk voting agreement discussed above, F5 can identify no agreement, arrangement or understanding by Monarch to exercise its votes in any matter whatsoever, let alone to cooperate or act in concert with anyone, either as to the Service Contracts or anything else. Such an allegation would be impermissibly speculative in any event. *Twombly*, 550 U.S. at 553-54.

Contrary to F5's assertions, the Delaware Supreme Court's decision in *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del. 1993), does *not* stand for the proposition that, once a shareholder cooperates with other shareholders as to one transaction, that shareholder assumes fiduciary duties as to every subsequent transaction involving the company. F5 Opp. at 10. *Tri-Star* involved a group of shareholders who collectively "control[led] over 56.6%, an absolute majority, of [the company's] common stock" in support of the same transaction alleged to have caused the plaintiff's injury. 634 A.2d at 328. It did not purport to hold a minority shareholder accountable for a later transaction. A decision here that Monarch—a 7.4% shareholder in Star Bulk (Compl. ¶ 65)—owes a fiduciary duty to Star Bulk shareholders, just because it supported the Oceanbulk merger pursuant to a perfectly legal voting agreement, would be a radical and

erroneous departure from existing Delaware law. The Court should decline F5's invitation to create a fiduciary duty running from a 7.4% stockholder to other stockholders.

## II. F5'S DILUTION CLAIM AGAINST MONARCH MUST BE DISMISSED.

F5's opposition to Monarch's motion to dismiss F5's dilution claim depends on a similar belated theory of fiduciary duty, again relying on *Tri-Star*. F5 Opp. at 11. It too should be ignored, for the reasons stated above. Further, in contrast to the *Tri-Star* defendants' collectively controlling "an absolute majority" of the company's stock, 634 A.2d at 328, F5 admits in this case that, before the Oceanbulk Merger, Monarch owned only 21% of all outstanding shares and 28.2% of the unaffiliated shares; and that defendants collectively owned 43.9%, "less than a majority," of Star Bulk's outstanding shares.[8] F5 Opp. at 11. Even this 43.9% figure is too high, as the defendants who *were* potentially conflicted in the Oceanbulk Merger (certain Oaktree and Pappas defendants) agreed to vote their shares "in the same proportion as the number of common shares that are voted in favor of the [Oceanbulk Merger] by the Unaffiliated Shareholders" so that their votes "would effectively be redistributed pro rata" to have no impact on the *unaffiliated* shareholders' approval (or disapproval) of the merger.[9] Even acting collectively, therefore, the defendants here could not compel the Oceanbulk Merger. The Oceanbulk Merger nevertheless succeeded because "an overwhelming majority of the shareholders voted to approve" it.[10] Because Monarch was not part of a "control group" that compelled the Oceanbulk Merger, it owed no fiduciary duty to F5. *Dubroff*, 2009 WL 1478697, at *4. The fact that Monarch's

---

[8] Moreover, defendant Monarch Alternative Capital LP ("MAC") has never owned any shares of Star Bulk, so it could never be a part of a controlling block of shareholders. The dilution claim should be dismissed as to MAC for this independent reason.

[9] Ex. 5 to Mundiya Dec. (Star Bulk Proxy Statement dated June 20, 2014). The Court may take judicial notice of this publicly filed document on a motion to dismiss. *Supra* n.4.

[10] Ex. 2 to Mundiya Dec. (Exhibit 99.1 to Star Bulk's SEC Form 6-K dated July 15, 2014).

11

proportional ownership of Star Bulk *declined* at the same rate as F5's—in a transaction approved by an overwhelming majority of the unaffiliated shareholders— therefore requires dismissal of the dilution claim as to Monarch. Monarch Mot. at 10.  Indeed, as Defendants have previously noted (Letter to Chambers dated Jan. 16, 2015 (ECF 17) at 3), courts readily dismiss claims by shareholders complaining of unfairness where, as here, a majority of the unaffiliated shareholders have voted in favor of a transaction that has been approved by an independent special committee.  *In re Kenneth Cole Prods., Inc.*, 2014 App. Div. LEXIS 8037, at *1-2 (1st Dep't Nov. 20, 2014).

## **CONCLUSION**

For the foregoing reasons, Monarch respectfully requests that the Court dismiss F5's Second and Fourth Causes of Action against Monarch with prejudice. The remaining causes of action against Roger Schmitz should be dismissed for all of the reasons set forth in the Reply Memorandum of Law in Further support of Defendants' Joint Motion to Dismiss.

DATED: May 8, 2015

Respectfully submitted,

WILLKIE FARR & GALLAGHER, LLP

By: /s/ Tariq Mundiya
   Tariq Mundiya
   Matthew W. Edwards
   tmundiya@willkie.com
   787 Seventh Avenue
   New York, NY 10019-6099
   (212) 728-8000 (telephone)
   (212) 728-8111 (facsimile)

   *Attorneys for Defendants Monarch Alternative Capital LP, Monarch Alternative Solutions Master Fund Ltd, Monarch Capital Master Partners II-A LP, Monarch Capital Master Partners II LP, Monarch Debt Recovery Master Fund Ltd, Monarch Opportunities Master Fund Ltd, P Monarch Recovery Ltd., and Roger Schmitz*

## CERTIFICATE OF FILING AND SERVICE

     I hereby certify that on May 8, 2015, copies of the foregoing Reply Memorandum of Law in Further Support of the Monarch Defendants' Motion to Dismiss Plaintiff's Second and Fourth Causes of Action and the accompanying Declaration of Tariq Mundiya (with exhibits thereto) in support thereof, were filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's electronic system.

                                                    /s/  Tariq Mundiya
                                                    Tariq Mundiya