# Exhibit 5

Table of Contents

**Exhibit 99.1**

**Proxy Statement**

Table of Contents



June 20, 2014

Dear Stockholders:

     You are invited to attend a special meeting (the "Special Meeting") of the stockholders of Star Bulk Carriers Corp. (the "Company" or "Star Bulk"), to be held on July 11, 2014, at the Hotel Grande Bretagne, Syntagma Square, Athens 10564, Greece at 11:00 a.m. (local time).

     At the Special Meeting you will be asked to approve the Agreement and Plan of Merger, dated as of June 16, 2014 (as amended from time to time, the "Merger Agreement") among Star Bulk, Star Synergy LLC, a Marshall Islands limited liability company and a wholly-owned subsidiary of Star Bulk ("Oaktree Holdco Merger Sub"), Star Omas LLC, a Marshall Islands limited liability company and a wholly-owned subsidiary of Star Bulk ("Pappas Holdco Merger Sub" and together with Oaktree Holdco Merger Sub, the "Merger Subs"), Oaktree OBC Holdings LLC, a Marshall Islands limited liability company controlled by investment funds managed by Oaktree Capital Management, L.P. (the "Oaktree Holdco"), Millennia Limited Liability Company, a Marshall Islands limited liability company controlled by certain immediate family members of Star Bulk non-Executive Chairman Mr. Petros Pappas, including Milena Maria Pappas, who is also one of our directors (the "Pappas Holdco" and, together with the Oaktree Holdco, the "Oceanbulk Holdcos"), Oaktree Dry Bulk Holdings LLC, a Marshall Islands limited liability company (the "Oaktree Seller") and Millennia Holdings LLC, a Marshall Islands limited liability company (the "Pappas Seller" and, together with the Oaktree Seller, the "Sellers"), pursuant to which each of the Oceanbulk Holdcos will merge with and into one of the Merger Subs (the "Merger"), with the Merger Subs continuing as the surviving companies and wholly-owned subsidiaries of Star Bulk.

     The Oceanbulk Holdcos collectively own all of the outstanding equity interests in Oceanbulk Shipping LLC, a Marshall Islands limited liability company ("Oceanbulk Shipping") and Oceanbulk Carriers LLC, a Marshall Islands limited liability company ("Oceanbulk Carriers" and, together with Oceanbulk Shipping, "Oceanbulk"), which, through their subsidiaries, either own and operate a fleet of 12 dry bulk carrier vessels, with an average age as of May 31, 2014 of 5.3 years, including five Capesize vessels, two Post-Panamax vessels, three Kamsarmax vessels and two Supramax vessels and own contracts for the construction of 25 newbuilding dry bulk vessels with fuel efficiency specifications at shipyards in Japan and China. Currently, investment funds affiliated with the Oaktree Seller beneficially own approximately 19.6% of the outstanding common shares of Star Bulk and, indirectly through Oaktree Holdco, also beneficially own 90% of the equity interests in Oceanbulk. As part of the Merger, Star Bulk has agreed to acquire two Kamsarmax vessels (the "Heron Vessels") from Heron Ventures Ltd. (the "Heron JV"), a joint venture in which Oceanbulk owns indebtedness that is convertible into 50% of the equity of the Heron JV, for an aggregate of 2,115,706 shares of common stock ("common shares") of the Company (the "Heron Consideration").

     In addition, at the Special Meeting you will be asked to approve the Share Purchase Agreement, dated as of June 16, 2014 (as amended from time to time, the "Pappas Agreement") among Star Bulk, Mirabel Shipholding & Invest Limited ("Mirabel"), Mirach Shipping Company Limited ("Mirach") and Bluesea Invest and Holding Limited (together with Mirabel and Mirach, the "Pappas Entities"), entities controlled by certain members of the family of our non-Executive Chairman, Mr. Petros Pappas, including Milena Maria Pappas, who is also one of our directors, pursuant to which Star Bulk has agreed to, subject to the satisfaction or waiver of the conditions set forth in the Pappas Agreement, substantially concurrently with the completion of the Merger, acquire all of the issued and outstanding shares of Dioriga Shipping Co. ("Dioriga") and Positive Shipping Company ("Positive Shipping"), which own and operate a dry bulk carrier vessel and a contract for the construction of a newbuilding drybulk carrier with fuel efficient specifications, respectively (such vessels being the "Pappas Vessels", and the acquisition of the Pappas Entities being the "Pappas Companies Acquisition").

**Your vote is very important. Whether or not you plan to attend the Special Meeting, please complete, date, sign and return, as promptly as possible, the enclosed proxy card in the accompanying prepaid reply envelope, or submit your proxy over the Internet or by telephone. If you attend the Special Meeting and vote in person, your vote by ballot will revoke any proxy previously submitted.**

Table of Contents

If the Merger is completed, all of the membership interests of the Oceanbulk Holdcos that are outstanding immediately prior to the effective time of the Merger will automatically be converted into the right to receive an aggregate of 48,395,766 common shares (the "Merger Consideration"), together with the Heron Consideration and certain distributions from the Heron JV, on the terms and subject to the conditions set forth in the Merger Agreement. The closing of the Pappas Companies Acquisition will, subject to the satisfaction or waiver of the conditions set forth in the Pappas Agreement, occur substantially concurrently with the completion of the Merger, at which time certain of the Pappas Entities will receive 3,592,728 common shares (the "Pappas Consideration"). The 50,511,472 common shares issued pursuant to the Merger Agreement, including the Heron Consideration, together with the Pappas Consideration, will represent 64.7% of the outstanding common shares immediately after the closing thereof.

By virtue of the Merger and the Pappas Companies Acquisition, the Company has agreed to assume, including by way of refinance, all of the outstanding indebtedness of Oceanbulk, Dioriga and Positive Shipping. The Company has also agreed to refinance the indebtedness of the Heron JV applicable to the Heron Vessels as of the date the Company acquires such Heron Vessels. If the Merger, including the acquisition of the Heron Vessels and the Pappas Vessels, had closed on March 31, 2014, we would have had total outstanding indebtedness of $383.99 million and the book value of our assets would have been $1,364.97 million.

Pursuant to resolutions of a Special Committee of the Company's Board of Directors (the "Board") consisting of two disinterested directors who are not officers, employees, representatives, agents or affiliates of the Sellers, the Oceanbulk Holdcos or the Pappas Entities, and who do not have an economic interest in the Sellers, the Oceanbulk Holdcos or the Pappas Entities (the "Special Committee"), the Special Committee unanimously determined that the Merger Agreement, the Pappas Agreement, and the transactions contemplated thereby (the "Transactions" and collectively with the Merger Agreement and the Pappas Agreement, the "Merger Agreement Proposal") as well as the Merger Consideration, the Pappas Consideration and the Heron Consideration are fair to and in the best interests of the Company and the stockholders of the Company, other than the Sellers and their respective affiliates (the "Unaffiliated Stockholders"). The Special Committee also unanimously declared advisable the Merger Agreement, the Pappas Agreement and the Transactions, including the Merger, and unanimously recommended to the Board that the Merger Agreement Proposal be approved by the Board and submitted for a vote at a meeting of the Company's stockholders. The Special Committee made its determination after consultation with its independent legal and financial advisors and consideration of a number of factors, including a fairness opinion presented to the Special Committee by its independent financial advisors.

Following the recommendation of the Special Committee, all of the members of the Board, other than Mr. Petros Pappas and Ms. Milena Maria Pappas, who recused themselves from the Board's vote based on the reasons set forth below, pursuant to resolutions adopted at a meeting of the Board held on June 15, 2014, (i) determined that the Merger Agreement Proposal as well as the Merger Consideration, the Pappas Consideration and the Heron Consideration are fair to and in the best interests of the Company and the Unaffiliated Stockholders, (ii) approved, adopted and declared advisable the Merger Agreement, the Pappas Agreement and the Transactions as well as the Merger Consideration, the Pappas Consideration and the Heron Consideration, (iii) resolved to recommend that the Merger Agreement Proposal be submitted at a meeting of the Company's stockholders for approval and (iv) adopted the recommendation by the Special Committee that the Company's stockholders approve the Merger Agreement Proposal. Mr. Petros Pappas and Ms. Milena Maria Pappas recused themselves from the Board's vote authorizing the Transactions due to their relationships with the Sellers, Dioriga, Positive Shipping and the Pappas Entities.

**The Board, acting upon the unanimous recommendation of the Special Committee and after consultation with its independent legal and financial advisors and consideration of a number of factors including a fairness opinion presented by its independent financial advisors, has determined that the Merger Agreement, the Pappas Agreement and the Transactions, including the Merger, the Pappas Companies Acquisition, the Merger Consideration, the Pappas Consideration and the Heron Consideration, are in the best interests of the Company and the Unaffiliated Stockholders, and has approved, adopted and declared advisable the Merger Agreement, the Pappas Agreement and the Transactions, including the Merger, the Pappas Companies Acquisition, the Merger Consideration, the Pappas Consideration and the Heron Consideration, and recommends that you vote "FOR" the Merger Agreement Proposal.**

Table of Contents

The Company is holding the Special Meeting so that our stockholders may vote with respect to the adoption of the Merger Agreement Proposal. The proposed Transactions are very important and will have a transformative impact on the capitalization, balance sheet, ownership and governance of the Company. The Transactions also include proposed agreements with affiliates of the Company and two of our Directors, Mr. Petros Pappas and Ms. Milena Maria Pappas, who have a financial interest in the Transactions and who, collectively with their affiliates, will own approximately 12.6% of the outstanding common shares after giving effect to the Transactions. Moreover, the Oaktree Seller and its affiliates will own approximately 61.3% of the outstanding common shares after giving effect to the Transactions. Because of these and other considerations, the Special Committee and the Board of Directors, other than Mr. Petros Pappas and Ms. Milena Maria Pappas, unanimously determined that the Company seek approval of the Unaffiliated Stockholders for the Merger Agreement Proposal in the manner set forth in the following paragraph. Mr. Petros Pappas and Ms. Milena Maria Pappas recused themselves from the Board of Directors' vote authorizing this transaction due to their financial interest in the Transactions and their relationships with the Sellers, Dioriga, Positive Shipping and the Pappas Entities. In addition, the Oaktree Seller, the Pappas Seller, and certain affiliates and related parties thereof (including Mr. Petros Pappas and Milena Pappas) agreed to voting restrictions, ownership limitations and standstill provisions, as the result of discussions between the Special Committee and other relevant parties, in order to mitigate the possibility that the transaction might be deemed a change of control of the Company for certain purposes.

Accordingly, the parties to the Merger Agreement and the Pappas Agreement have agreed to (i) seek the vote of the Company's stockholders with respect to the Merger Agreement Proposal, and (ii) require that the approval of the Merger Agreement Proposal by the Company's stockholders be a closing condition to the Transactions, which approval requires the affirmative vote of the holders of a majority of the common shares present (in person or by proxy) and voting at the Special Meeting. Each of the Sellers has agreed to cause themselves and their respective affiliates, including Ms. Milena Maria Pappas, to vote all common shares owned by them in favor of the Merger Agreement Proposal in the same proportion as the number of common shares that are voted in favor of the Merger Agreement Proposal by the Unaffiliated Stockholders entitled to vote at the Special Meeting, or any postponement or adjournment thereof. This means that the voting rights of each of the Sellers, the Pappas Entities and their respective affiliates would effectively be redistributed pro rata among the Unaffiliated Stockholders entitled to vote at the Special Meeting.

Certain stockholders of the Company affiliated with Monarch Alternative Capital LP (the "Monarch Stockholders"), which collectively own approximately 20.9% of the outstanding common shares and represent 28.2% of Unaffiliated Stockholders, have entered into a voting agreement with the Sellers and Mirabel pursuant to which, among other things and subject to certain conditions, the Monarch Stockholders have agreed to vote their shares in favor of approval of the Merger Agreement Proposal (the "Voting Agreement").

**The Board recommends that you vote "FOR" the proposal to approve the Merger Agreement Proposal.**

The Company will also transact any other business that may properly come before the Special Meeting, or any adjournment or postponement of the Special Meeting, by or at the direction of the Board.

The obligation of the Company to complete the Merger is subject to the satisfaction or waiver of substantial conditions set forth in the Merger Agreement, including, without limitation, the conditions specified above. The obligation of the Company to complete the Pappas Companies Acquisition is subject to the satisfaction or waiver of substantial conditions set forth in the Pappas Agreement, including, without limitation, the completion of the Merger.

The accompanying proxy statement provides you with detailed information about the Special Meeting, the Merger Agreement, the Pappas Agreement and the Transactions, including the Merger. A copy of the Merger Agreement is attached as Annex A to the proxy statement. A copy of the Pappas Agreement is attached as Annex B to the proxy statement. We encourage you to carefully read the entire proxy statement and its annexes, including the Merger Agreement and the Pappas Agreement.

Table of Contents

If you have any questions or need assistance voting your shares, please call Advantage Proxy Inc., the Company's proxy solicitor in connection with the Special Meeting, toll-free at (877) 870-8565 or if you are a bank or broker, (206) 870-8565.

Sincerely,

Spyros Capralos
*Chief Executive Officer, President and Director*

The accompanying proxy statement is dated June 20, 2014, and is first being mailed to the Company's stockholders on or about June 20, 2014.