UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| F5 CAPITAL, A CAYMAN ISLANDS CORPORATION, | No. 14 Civ. 9356 (AT) |
| Plaintiff, | |
| -against- | |
| PETROS PAPPAS, et al., | |
| Defendants, | |
| -and- | |
| STAR BULK CARRIERS CORP., | |
| Nominal Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.     The Plaintiff Has Failed to Plead Demand Futility ............................................... 2

       A.     The Plaintiff Misstates Delaware Law, Which Requires Allegations that a
              Majority of the Board Is Interested or Lacks Independence ......................... 3

       B.     The Plaintiff's Allegations of Interestedness and a Lack of Independence
              Are Insufficient under Delaware Law ......................................................... 7

II.    The Plaintiff Has Failed to State a Claim for Corporate Waste ......................... 10

III.   The Putative Class Action Dilution Claim Is Derivative in Nature ................... 11

IV.    Any Request by Plaintiff for Leave to Amend Should Be Denied ..................... 13

CONCLUSION .............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abbott Laboratories Derivative Shareholders Litigation*,
   325 F.3d 795 (7th Cir. 2003) ................................................................6

*American International Group, Inc.* v. *Greenberg*,
   965 A.2d 763 (Del. Ch. 2009)...........................................................6, 7

*Aronson* v. *Lewis*,
   473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm* v. *Eisner*,
   746 A.2d 244 (Del. 2000) ..............................................................5, 7, 8

*Beam* v. *Stewart*,
   845 A.2d 1040 (Del. 2004) ............................................................3, 4, 7

*Brautigam* v. *Blankfein*,
   8 F. Supp. 3d 395 (S.D.N.Y. 2014), *aff'd sub nom. Brautigam* v. *Dahlback*,
   No. 14-1490, 2015 U.S. App. LEXIS 4675 (2d Cir. Mar. 20, 2015) ........................5

*Brehm* v. *Eisner*,
   746 A.2d 244 (Del. 2000) ...............................................................11

*Buckley* v. *O'Hanlon*,
   No. 04-955 (GMS), 2007 U.S. Dist. LEXIS 22211 (D. Del. Mar. 28, 2007)..........................4

*Cuoco* v. *Moritsugo*,
   222 F. 3d 99 (2d Cir. 2000)................................................................14

*Cambridge Ret. Sys.* v. *Bosnjak*,
   No. 9178-CB, 2014 Del. Ch. LEXIS 107 (Del. Ch. June 26, 2014).......................10

*In re Caremark International Inc. Derivative Litigation*,
   698 A.2d 959 (Del. Ch. 1996)................................................................6

*DeBlasio* v. *Merrill Lynch & Co., Inc.*,
   No. 07-0318 (RJS), 2009 U.S. Dist. LEXIS 64848 (S.D.N.Y. July 27, 2009)......................15

*Debussy LLC* v. *Deutsche Bank AG*,
   No. 05-5550 (SHS), 2006 U.S. Dist. LEXIS 16432 (S.D.N.Y. Mar. 29, 2006),
   *aff'd*, 242 F. App'x 735 (2d Cir. 2007)................................................................11

*Dirienzo* v. *Lichtenstein*,
   No. 7094-VCP, 2013 Del. Ch. LEXIS 242 (Del. Ch. Sept. 30, 2013), *appeal
   refused*, 80 A.3d 959 (Del. 2013) ................................................................13

ii

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Dougherty* v. *Town of N. Hempstead Board of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002).................................................................................14

*Feldman* v. *Cutaia*,
    956 A.2d 644 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008).....................12, 13

*Gentile* v. *Rossette*,
    906 A.2d 91 (Del. 2006) .................................................................................11

*In re Goldman Sachs Mortgage Servicing Shareholder Derivative Litigation*,
    42 F. Supp. 3d 473 (S.D.N.Y. 2012).................................................................15

*Langner* v. *Brown*,
    913 F. Supp. 260 (S.D.N.Y. 1996).....................................................................8

*In re Massey Energy Co. Derivative & Class Action Litigation*,
    No. 5430-VCS, 2011 Del. Ch. LEXIS 83 (Del. Ch. May 31, 2011) ...................5, 6

*McCarthy* v. *Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)........................................................................13, 14

*Michelson* v. *Duncan*,
    407 A.2d 211 (Del. 1979) ................................................................................10

*In re Nine Systems Corp. Shareholders Litigation*,
    No. 3940-VCN, 2014 Del. Ch. LEXIS 171 (Del. Ch. Sept. 4, 2014)....................13

*In re Oxford Health Plans, Inc. Securities Litigation*,
    192 F.R.D. 111 (S.D.N.Y. 2000) .......................................................................5

*Rales* v. *Blasband*,
    634 A.2d 927 (Del. 1993) .................................................................................5

*Rosenquist* v. *Economou*,
    No. 2010-002, slip op. (Sup. Ct. Marshall Islands Oct 3, 2011).............................7

*In re SAIC Derivative Litigation*,
    948 F. Supp. 2d 366 (S.D.N.Y. 2013).................................................................15

*Saito* v. *McCall*,
    No. 17132-NC, 2004 Del. Ch. LEXIS 205 (Del. Ch. Dec. 20, 2004), *overruled*
    *in part on other grounds by Lambrecht* v. *O'Neal*, 3 A.3d 277 (Del. 2010) ...........4

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Sampson* v. *Robinson*,
  Nos. 07-6890 (PAC), 07-5867, 2008 U.S. Dist. LEXIS 63565 (S.D.N.Y. Aug.
  20, 2008) .................................................................................................................6

*St. Clair Shores General Employees Retirement System* v. *Eibeler*,
  745 F. Supp. 2d 303 (S.D.N.Y. 2010).............................................................14, 15

*Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .................................................................................13

*White* v. *Panic*,
  783 A.2d 543 (Del. 2001) ...................................................................................11


**Other Authorities**

The Hon. A. Torres, Individual Rules of Practice in Civil Cases III(B).......................14

The Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss F5's Shareholder Derivative Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1.[1]

## PRELIMINARY STATEMENT

The Defendants showed in their moving papers that F5's complaint should be dismissed because:  (1) F5 has failed to allege with particularity that its conceded failure to make demand on the Star Bulk board before asserting its derivative claims should be excused; (2) F5 has failed to allege facts plausibly giving rise to a claim for corporate waste; and (3) F5 has failed to state a direct claim for dilution.  The Defendants made that showing by analyzing the allegations in F5's complaint and explaining why those allegations are deficient under established Delaware law precedents from courts in Delaware and from this Court.

In response, F5 has submitted an opposition in which it:  (1) ignores many of the Defendants' legal arguments; (2) relies on case authorities that, on their face, do not support F5's proffered legal interpretations and, in some instances, have nothing to do with the proposition for which F5 cites them; and (3) invites this Court to adopt positions that no other court has ever adopted and that are directly contrary to longstanding Delaware law principles.

In lieu of providing authorities that can sustain its complaint—because there are none—F5 argues that the Defendants have "attack[ed] the credibility of [F5's] owner," Nobu Su, and that his credibility "does not render . . . F5 inadequate to represent Star Bulk on the derivative claims or the absent Class members on the dilution claim."  (Pl.'s Br. 18.)  The Defendants were not the ones who attacked Mr. Su's credibility.  The Defendants instead observed in their preliminary statement that another court had determined as a matter of fact that

---

[1]   Capitalized terms have the same meanings given to them in the Defendants' joint moving papers (*see* ECF No. 65) unless otherwise indicated.  "Defs.' Br." refers to the Defendants' joint moving papers.  "Pl.'s Br." refers to F5's opposition brief.  (ECF No. 74.)

Mr. Su's sworn testimony was not believable—and that it is not the only court to have done so. If the Court does not grant this motion—as we respectfully urge that it should—Defendants will demonstrate that F5 cannot establish that it is a proper derivative or class action plaintiff because, among other things, of Mr. Su's lack of credibility.

Simply put, nothing F5 has said in its opposition in any way rebuts the Defendants' arguments or remedies the critical pleading deficiencies in the complaint. Each of F5's claims should therefore be dismissed with prejudice.

## ARGUMENT

### I.   THE PLAINTIFF HAS FAILED TO PLEAD DEMAND FUTILITY

F5 has failed to adequately plead demand futility under settled Delaware law.

As we showed in our moving papers, and as F5 does not dispute, in a case of this kind, a prospective derivative plaintiff must first demand that the board of directors of a corporation take a desired action before bringing litigation to compel that result. (Defs.' Br. 8-9; Pl.'s Br. 5.) Only if the plaintiff can plead *particularized* facts as to why making such demand on the board would be futile may that plaintiff bring an action directly, and be excused from making a demand for relief to the board, which is ordinarily charged with managing the corporation's affairs.

F5 has not made the allegations necessary to achieve the extraordinary result of excusing demand on the board. As we showed in our moving papers, F5 has failed to allege particularized facts that would create a reasonable doubt that a majority of the Star Bulk board is interested or lacks independence or that the transactions at issue here were not the result of a valid exercise of business judgment. (Defs.' Br. 11-23.)

2

In its opposition, F5 does not dispute that established Delaware law requires it to plead with particularity that a majority of the Star Bulk board is interested or lacks independence. Nor does F5 attempt to explain how its complaint satisfies that requirement. Instead, F5 contends: (1) that it need not make *individualized* allegations about each purportedly conflicted director, and (2) that its allegations of interestedness and a lack of independence are sufficient under the law. F5 is wrong on both counts.

### A. The Plaintiff Misstates Delaware Law, Which Requires Allegations that a Majority of the Board Is Interested or Lacks Independence

F5 is required under Delaware law to allege with particularity that a majority of the Star Bulk board is interested or lacks independence. (Defs.' Br. 9-10.) F5 must do this "director-by-director and transaction-by-transaction." (Defs.' Br. 11 (citing cases).) *See also Beam* v. *Stewart*, 845 A.2d 1040, 1051 (Del. 2004) (explaining that a court "must review the complaint on a case-by-case basis to determine whether it states with particularity facts indicating that a relationship—whether it preceded or followed board membership—is so close that the director's independence may *reasonably* be doubted").

Despite these settled Delaware law principles, F5 asks this Court to relieve it of its burden of making individualized director allegations by arguing that "[a] derivative plaintiff is not required to plead particularized allegations for each Individual Defendant, especially where, as here, they acted affirmatively as a group to approve the three challenged transactions." (Pl.'s Br. 8.) As an initial matter, this makes no sense, because boards always act "as a group" to take action; as such, adopting F5's proposed approach would relieve a purported derivative plaintiff of pleading interestedness on a defendant-by-defendant basis in every case.

Not surprisingly, the law does not support this illogical proposition.  As purported support for that argument, F5 cites six cases (*see id.* at 8 & n.7), each of which, we demonstrate in turn below, does not support F5's position:

*First*, in what appears to be F5's principal case, *Saito* v. *McCall*, No. 17132-NC, 2004 Del. Ch. LEXIS 205 (Del. Ch. Dec. 20, 2004), *overruled in part on other grounds by Lambrecht* v. *O'Neal*, 3 A.3d 277 (Del. 2010), the court held that demand was excused where the plaintiff alleged that the board's audit committee knew that an audit was "high risk" and that the board itself knew of problematic accounting practices.  *Id.* at *33.  Significantly, the court specifically found that the allegations were sufficient to show that *four of six* members of one pre-merger board—that is, a majority—were not disinterested.  *Id.* at *33 n.68.  The court then noted that for the post-merger board, a showing had been made that at least six out of twelve were conflicted.[2]  *Id.* at *15, *35.  F5's allegations fail to make an analogous showing.

*Second*, in *Buckley* v. *O'Hanlon*, No. 04-955 (GMS), 2007 U.S. Dist. LEXIS 22211 (D. Del. Mar. 28, 2007), the court held that the plaintiff had sufficiently alleged a direct breach of fiduciary duty claim even though he had not "name[d] the involved defendants individually," explaining that "group pleading may be sufficient in some circumstances."  *Id.* at *13-15.  *Buckley*, however, did not involve derivative claims, and the court thus did not address the requirements for pleading demand futility.  *Buckley*'s group pleading analysis in the context of a direct breach of fiduciary claim cannot conceivably displace longstanding Delaware law requiring a derivative plaintiff to show that a majority of the board is interested or lacks independence.

---

[2]   A showing that one-half of an evenly-numbered board is interested or lacks independence is sufficient to satisfy the demand futility test.  *Beam*, 845 A.2d at 1046 n.8.

*Third*, in *In re Oxford Health Plans, Inc. Securities Litigation*, 192 F.R.D. 111 (S.D.N.Y. 2000), the court did not address director disinterestedness or independence because it found that demand was excused under a standard that does not apply here.  *Id.* at 117.  In particular, as the Defendants explained in their moving papers, "[w]here, as here, a plaintiff challenges a *decision* of the board as opposed to a *failure to act*, the plaintiff must establish demand futility under the test set forth by the Delaware Supreme Court in [*Aronson* v. *Lewis*, 473 A.2d 805 (Del. 1984) (emphasis added), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000)]."  (Defs.' Br. 9.)   In *Oxford*, because claims of board *inaction* "predominate[d]," the court primarily applied the demand futility test articulated in *Rales* v. *Blasband*, 634 A.2d 927, 936 (Del. 1993), which governs in cases involving a board's failure to act.  *Oxford*, 192 F.R.D. at 117; *see also Brautigam* v. *Blankfein*, 8 F. Supp. 3d 395, 400, 403-04 (S.D.N.Y. 2014) (explaining the difference between *Aronson* and *Rales* and holding that the plaintiffs' allegations failed under either test), *aff'd sub nom. Brautigam* v. *Dahlback*, No. 14-1490, 2015 U.S. App. LEXIS 4675 (2d Cir. Mar. 20, 2015).  As to those portions of the *Oxford* plaintiffs' complaint that alleged misfeasance, rather than nonfeasance, the court found that demand was excused under the *second* prong of *Aronson*—pertaining to the business judgment rule—because "the dissemination of false and misleading financial statements cannot be deemed to be the product of a valid exercise of business judgment."  *Oxford*, 192 F.R.D. at 117.  Accordingly, *Oxford* does nothing to support F5's contention regarding the first *Aronson* prong—that it need not allege particularized facts showing the interestedness or lack of independence of a majority of the Stark Bulk directors.

*Fourth*, in *In re Massey Energy Co. Derivative & Class Action Litigation*, No. 5430-VCS, 2011 Del. Ch. LEXIS 83 (Del. Ch. May 31, 2011), the issue before the court was

whether to issue a preliminary injunction to block a merger, not demand futility. Accordingly, as the court explained, "the determination of the fate of the [derivative claims] [was] not one that should or must be made right now," and the court thus explicitly did not rule on whether the plaintiffs had adequately pled demand futility. *Id.* at *8, *127. And, in all events, the derivative claims in *Massey*, like the majority of those in *Oxford*, were premised on board inaction, and thus were subject to a derivation of the *Rales* test recognized by the Delaware Supreme Court in *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996), as opposed to the *Aronson* test that applies in this case. *In re Massey Energy*, 2011 Del. Ch. LEXIS 83, at *73-74*; see also Sampson* v. *Robinson*, Nos. 07-6890 (PAC), 07-5867, 2008 U.S. Dist. LEXIS 63565, at *9-13 (S.D.N.Y. Aug. 20, 2008) (explaining the *Caremark* test that governed in *Massey* and distinguishing it from *Aronson*). *Massey* thus does not excuse the deficiencies in F5's demand futility allegations.

Fifth, in *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003), the court held that the plaintiffs had *not* "pleaded specific allegations to create a reasonable doubt as to the majority of the directors' disinterestedness or independence" under the first prong of *Aronson*. *Id.* at 807. Instead, the court held that demand was excused under *Aronson*'s second prong, because the plaintiffs "sufficiently pleaded allegations, if true, of a breach of the duty of good faith to reasonably conclude that the directors' actions fell outside the protection of the business judgment rule." *Id.* at 809. Like *Oxford*, *Abbot* does not suggest, as F5 urges, that demand may be excused based on generalized group allegations of a board's interestedness or lack of independence.

Finally, in *American International Group, Inc.* v. *Greenberg*, 965 A.2d 763 (Del. Ch. 2009), the court held that demand was excused where a special litigation committee tasked

by the board with investigating the plaintiffs' claims simply failed to take a position on whether the claims should be pursued. *Id.* at 807-11. That circumstance in no way applies in this case. Furthermore, and somewhat remarkably, F5 does not even cite the portion of *Greenberg* that actually addresses demand futility. Instead, F5 quotes from a portion of the opinion in which the court addressed whether the plaintiffs had adequately alleged scienter with respect to their fiduciary duty claims. (Pl.'s Br. 8 n.7 (citing *Greenberg*, 965 A.2d at 799).) The *Greenberg* court's discussion on that particular issue has nothing to do with demand futility.

In short, F5 has not cited any case that supports its unsubstantiated and novel view that it need not allege with particularity that a majority of the members of the Star Bulk board is interested or lacks independence—on a director-by-director basis. To the contrary, as the Defendants have demonstrated, that is precisely the showing that F5 is obligated, but has failed, to make.

### B.   The Plaintiff's Allegations of Interestedness and a Lack of Independence Are Insufficient under Delaware Law

Because F5 fundamentally misapprehends the Delaware law demand futility test, its attempt to defend its demand futility allegations is off the mark. F5 seems to think that it can avoid its obligation to show that an actual majority of the Star Bulk board is interested or lacks independence as to each of the transactions at issue based on nothing more than hyperbole and generalities. That approach has no support in the law. *See Rosenquist* v. *Economou*, No. 2010-002, slip op. at 16 (Sup. Ct. Marshall Islands Oct 3, 2011) (stating that even where there is controlling shareholder or officer, plaintiff must offer particularized allegations that directors are beholden to the controlling shareholder) (quoting *Beam*, 845 A.2d at 1054; citing *Aronson*, 473 A.2d at 815).

*First*, as to the Oceanbulk Transaction, the Defendants showed in their moving

papers that F5 has failed to allege particularized facts sufficient to create a reasonable doubt that a majority of the Star Bulk board is interested or lacks independence.  (Defs.' Br. 11-17.)  In its opposition, F5 barely responds to any of the Defendants' arguments on this point.  Indeed, F5 does not even mention *any* of the nine Star Bulk directors other than Roger Schmitz.[3]

Instead, F5's central rebuttal appears mostly in footnote 8 of its opposition. There, F5 asserts that it "is not required to allege that each Individual Defendant was interested or lacked independence, because Defendant Schmitz's interest and lack of independence tainted the two-man Special Committee and all the Individual Defendants acted affirmatively as a group to unanimously approve the merger."  (Pl.'s Br. 10 n.8.)  But the only legal authorities F5 identifies to support this argument are *Saito*, *Abbot Laboratories*, and *Greenberg*, which, for the reasons stated above, *supra* pp. 4-7, provide no support at all—and certainly not to the novel legal concept that one allegedly interested director can "taint" others.

*Second*, as to the Excel Transaction, the Defendants showed in their moving papers that F5 has failed to allege particularized facts sufficient to create a reasonable doubt that a majority of the Star Bulk board is interested or lacks independence because F5 makes no allegations *at all* concerning six directors, and its allegations concerning three directors are legally insufficient.  (Defs.' Br. 17-18.)  F5 does not respond to these arguments in its opposition.  (Pl.'s Br. 11.)  Instead, F5 charges that the Excel Transaction "is the very definition

---

[3]    As to Mr. Schmitz, the most F5 alleges about his alleged conflict is that he "conceived" the Oceanbulk Merger. F5 does not cite any case showing that the mere conception of a transaction renders a director conflicted or self-interested under a demand futility analysis.  To the contrary, as the Defendants showed in their moving papers, "mere director approval" is not enough to show a conflict or self-interest.  *Langner* v. *Brown*, 913 F. Supp. 260, 265 (S.D.N.Y. 1996).  A plaintiff instead must establish that the allegedly conflicted director stood to enjoy a benefit that did not "devolve[] upon the corporation or all stockholders generally."  *Aronson*, 473 A.2d at 812; *see also Langner*, 913 F. Supp. at 265.  F5 does not, and cannot, allege that Mr. Schmitz enjoyed any such benefit.

of self-dealing" because it was "structured to benefit Oaktree." (*Id.*) But even if that unsupported allegation were true, six of the directors are not Oaktree employees or board nominees, so any purported benefit to Oaktree could not possibly bear on their interestedness or lack of independence (even assuming they received a *personal* benefit, which F5 does not allege). Nor does F5 respond to the fact that the three Oaktree nominees on the Star Bulk board did not even vote on the Excel Transaction. (Defs.' Br. 18.) F5's own allegations thus do not establish that a majority of the board was conflicted with respect to this transaction.

*Third*, as to the Service Contracts, the Defendants showed in their moving papers that F5 has failed to allege that a majority of the board was interested or lacked independence because the complaint contains *no* allegations at all concerning any member of the board save one: Petros Pappas. (Defs.' Br. 18.) F5 does not dispute this in its opposition. (Pl.'s Br. 12.) Instead, F5 simply reiterates its allegation that Mr. Pappas alone was not disinterested, and says nothing about the other eight Star Bulk directors. One director of nine, of course, does not a majority make. Under no legal authority—even those cited by F5—could one interested director excuse demand on the board as a whole.

*     *     *

Because F5 has failed to allege with particularity that the Star Bulk board is unable to review a pre-suit demand concerning the transactions at issue, its derivative claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and corporate waste should be dismissed.[4]

---

[4] The Defendants showed in their moving papers that F5 has also failed to meet the second prong of the *Aronson* test—that is, F5 has failed to show that the three transactions at issue were not the result of the Star Bulk board's valid exercise of business judgment. (Defs.' Br. 19-23.) F5's only response is that these transactions could not have been the result of the exercise of business judgment because they purportedly constitute waste. (Pl.'s Br. 12-14.) That unfounded contention is addressed is below. *See infra* pp. 10-11.

9

## II.  THE PLAINTIFF HAS FAILED TO
## <u>STATE A CLAIM FOR CORPORATE WASTE</u>

In their moving papers, the Defendants showed that F5's corporate waste claim should be dismissed because, in addition to failing the demand futility test, F5 has failed to allege that the Star Bulk board "irrationally squandered corporate assets" and in fact concedes that Star Bulk received substantial consideration in connection with the Oceanbulk Merger and the Excel Transaction.[5] (Defs.' Br. 23-26.)

In response, F5 does not dispute its concession that Star Bulk received substantial consideration for both of these transactions.  As the Defendants observed in their moving papers, that concession alone requires dismissal of this claim.[6] (Defs.' Br. 25-26 (citing cases).) *See also, e.g.*, *Cambridge Ret. Sys.* v. *Bosnjak*, No. 9178-CB, 2014 Del. Ch. LEXIS 107, at *28 (Del. Ch. June 26, 2014) (dismissing waste claim because the allegations "do not rise to the level necessary to establish a complete failure of consideration or that the director defendants authorized an exchange that was so one-sided that no reasonable business person could conclude that [the company] received adequate consideration").

F5 nevertheless contends that it has plausibly alleged a corporate waste claim as to the Oceanbulk Merger because that transaction, according to F5, "unquestionably benefitted [Petros] Pappas and Oaktree" and because "buying [Oceanbulk] at such a high price served no legitimate purpose." (Pl.'s Br. 14.)  F5 similarly argues that its waste allegations are sufficient as

---

[5]   As the Defendants observed in their moving papers (Defs.' Br 23 n.9), and as F5 does not dispute, F5's corporate waste claim does not relate to the Service Contracts.

[6]   That concession also takes this case far beyond the ambit of *Michelson* v. *Duncan*, 407 A.2d 211 (Del. 1979), on which F5 relies. (Pl.'s Br. 13.)  *Michelson* sustained a waste claim where the plaintiff specifically alleged that the company's assets had been transferred for "for no consideration" at all.  407 A.2d at 217.  As noted, F5's own allegations acknowledge that Star Bulk received consideration in connection with both transactions on which this claim is based.

to the Excel Transaction because the Star Bulk board "caused Star Bulk to buy troubled assets from a bankrupt company[.]"  (*Id.*)

        In making these arguments, however, F5 ignores the Delaware Supreme Court's admonition that a corporate waste claim cannot stand "even if the transaction appears, with hindsight, to be unreasonably risky to a reviewing court."  *White* v. *Panic*, 783 A.2d 543, 554 (Del. 2001).  That is so because, as that court has explained, "courts are ill-fitted to attempt to weigh the adequacy of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk."  *Brehm* v. *Eisner*, 746 A.2d 244, 263 (Del. 2000) (internal quotation marks omitted).   But by arguing merely that Star Bulk overpaid in connection with the Oceanbulk Merger and the Excel Transaction and that Star Bulk was allegedly worse off for having done so after the fact, F5 in essence asks this Court—without reference to a single Delaware law case—to engage in just such an impermissible exercise.   F5's unsupported interpretation of corporate waste should be rejected, and this claim should be dismissed.

## III.    THE PUTATIVE CLASS ACTION <br> <u>DILUTION CLAIM IS DERIVATIVE IN NATURE</u>

        In their moving papers, the Defendants showed that F5's putative class action claim for dilution should be dismissed because it is derivative, not direct, in nature.  (Defs.' Br. 26.)  In particular, the Defendants explained that equity dilution claims are practically always viewed as derivative under Delaware law.  (*Id.* at 27-28 (citing cases).)  *See also Debussy LLC* v. *Deutsche Bank AG*, No. 05-5550 (SHS), 2006 U.S. Dist. LEXIS 16432, at *11 (S.D.N.Y. Mar. 29, 2006) ("Because injury alleged by a diminution of investment value is indirect and contingent upon injury to the corporation, the claim is derivative."), *aff'd*, 242 F. App'x 735 (2d Cir. 2007).  The Defendants also explained that the exception to this rule, as recognized by the Delaware Supreme Court in *Gentile* v. *Rossette*, 906 A.2d 91 (Del. 2006), does not apply to F5's

dilution claim because F5 has alleged no facts to trigger that exception as it has been interpreted by Delaware courts and this Court.  (Defs.' Br. 28-31.)

In response, F5 *admits* that "the typical dilution case . . . must be brought derivatively," but nevertheless contends that its dilution claim is not a "typical" dilution claim. (Pl.'s Br. 16.)  In F5's view of the world, a typical, derivative dilution claim "alleges a decrease in the *value* of [the] shares," while a supposedly direct dilution claim such as F5's "alleges a decrease in the *percentage* of [its] ownership."  (*Id.* at 16-17 (emphasis in original).)  To support its proffered distinction F5 does not cite *one* legal authority from any jurisdiction anywhere in the United States, much less any Delaware legal authority, including *Gentile* itself.

The absence of any authority is not surprising because Delaware precedent contradicts F5's stated understanding of the law.  In *Feldman* v. *Cutaia*, 956 A.2d 644 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008)—which F5 itself cites in its opposition (Pl.'s Br. 16)— the plaintiff asserted a dilution claim based on the allegation that his *percentage* ownership decreased while the defendants' *percentage* ownership increased.  *See Feldman*, 956 A.2d at 649 (Court of Chancery opinion) ("Feldman states that before the Dilutive Transactions, he owned roughly 10% of Telx; afterwards, however, his stake fell to 1.5%.  The Telx Defendants, their family members and their affiliates, taken as a group, ended up with holdings of approximately 60% of Telx's equity.")  The Delaware Court of Chancery nevertheless held that the dilution claim was derivative, *id.* at 657-58, and did not recognize the value-versus-percentage distinction F5 purports to draw.

Furthermore, F5's dilution claim also fails to come within the *Gentile* exception because, as the Court of Chancery explained in *Feldman*, *Gentile* is confined "to only those situations where a controlling stockholder exists."  *Id.* at 657.  That is because "any other

12

interpretation would swallow the general rule that equity dilution claims are solely derivative, and would cast great doubt on the continuing vitality of the [*Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)] framework." *Id.* Here, F5 concedes that the Defendants collectively owned "less than a majority of [Star Bulk's] shares . . . and thus lacked complete control over [Star Bulk]" before the Oceanbulk Merger. (Pl.'s Br. 18.) Thus, as in *Feldman*, because the Oceanbulk Merger did not "confer[] an exclusive benefit on any controlling stockholder of [Star Bulk], [F5] cannot bring [its dilution claim] as a direct claim." 956 A.2d at 657 (Court of Chancery opinion); *see also Dirienzo* v. *Lichtenstein*, No. 7094-VCP, 2013 Del. Ch. LEXIS 242, at *84 (Del. Ch. Sept. 30, 2013) ("[A] direct claim under . . . *Gentile* is against a majority or controlling shareholder only."), *appeal refused*, 80 A.3d 959 (Del. 2013).[7]

In short, F5 appears to have simply made up its own conception of a direct dilution claim, and now urges this Court to adopt it in the face of clear and unequivocal contrary precedent. That invitation should be declined, and F5's dilution claim should be dismissed.

## IV.   ANY REQUEST BY PLAINTIFF FOR LEAVE TO AMEND SHOULD BE DENIED

In a footnote on the last page of its opposition, F5 purports to reserve the right to amend its complaint if the Defendants' motion is granted in whole or in part. (Pl.'s Br. 19 n.10.) Any such request should be denied.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," but "[a] district court has discretion to deny

---

[7]    Some Delaware law courts have recognized a broader conception of *Gentile*. *See, e.g.*, *In re Nine Sys. Corp. S'holders Litig.*, No. 3940-VCN, 2014 Del. Ch. LEXIS 171, at *83-86 (Del. Ch. Sept. 4, 2014). But even in such cases, courts require a majority-conflicted board. *See id.* at *84. For the reasons discussed above, F5 has failed to allege that a majority of the Star Bulk board was conflicted as to any of the challenged transactions.

leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Granting leave to amend is "futile" if an amended claim still "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). When a claim's legal defects are "substantive" rather than the result of an "inadequately or inartfully pleaded" complaint, the opportunity to replead would be "futile" and "should be denied." *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, this Court's Individual Practices in Civil Cases preclude F5 from seeking leave to amend at this point in these proceedings. Section III(B)(i) provides that F5 could have sought leave to amend when the Defendants served a letter setting forth the anticipated bases for the motion to dismiss and that the Court would "liberally grant the plaintiff leave to amend . . . ." F5 never sought leave to amend at that time. And Section III(B)(ii) similarly provides that F5 had "a right to amend its pleading" after the motion to dismiss was filed. F5 never sought leave to amend at that time, either. Importantly, that provision clearly states that "[i]f the plaintiff elects not to amend its pleading [after a motion to dismiss is filed], *no further opportunities to amend to address the deficiencies identified by the motion to dismiss will be granted* and the motion will proceed in the normal course, pursuant to the briefing schedule set by the Court." (emphasis added). Because F5 never sought leave to amend its complaint after the Defendants' motion to dismiss was filed, it is barred from doing so now.

The law would not permit F5 to amend its complaint at this stage in any event. Judge Sullivan has explained that:

> [s]ome courts in this District have required a plaintiff to file a copy of the proposed amended pleading in order to demonstrate that Rule 15(a) relief is appropriate. At the very least, a party seeking leave to amend must provide some indication of the substance of the contemplated amendment in order to allow the

> Court to apply the standards governing Rule 15(a). Put simply, in the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.

*St. Clair Shores Gen. Emps. Ret. Sys.* v. *Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).

Courts in this District have thus denied request for leave where, as here, a plaintiff opposes a motion to dismiss while asking for leave to amend in the event the motion is granted. *See, e.g.*, *In re SAIC Derivative Litig.*, 948 F. Supp. 2d 366, 391-92 (S.D.N.Y. 2013) (denying leave to amend where "Plaintiffs filed a lengthy and detailed complaint," "chose not to amend their pleadings at any prior point in this litigation," and "requested leave to amend without any suggestion of what changes such amendment might effect"); *In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 42 F. Supp. 3d 473, 487 (S.D.N.Y. 2012) (denying request for leave to amend in an opposition to a motion to dismiss and noting that "the Second Circuit has repeatedly upheld a district court's decision to deny a plaintiff's informal request to amend its complaint when it failed to advise the district court of how an amendment would cure defects in the complaint") (citing cases). That is because, as this Court has previously told plaintiffs that, like F5, included a blanket request for leave to amend in a footnote of their opposition brief, "Rule 15(a) is not a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion." *DeBlasio* v. *Merrill Lynch & Co., Inc.*, No. 07-0318 (RJS), 2009 U.S. Dist. LEXIS 64848, at *128 (S.D.N.Y. July 27, 2009).

F5 is no different from the plaintiffs in these cases. Accordingly, its informal request for leave, unaccompanied by any suggestion of what additional allegations F5 would make to sustain its claims, should be denied.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Defendants' moving papers, the Defendants respectfully request that the Court grant their motion to dismiss F5's claims with prejudice.

Dated:  May 8, 2015
New York, New York

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**


By:  /s/ Andrew J. Ehrlich
     Andrew J. Ehrlich
     Gregory F. Laufer
     Amy J. Beaux

1285 Avenue of the Americas
New York, New York 10019
Tel. (212) 373-3000
Fax (212) 757-3990
aehrlich@paulweiss.com
glaufer@paulweiss.com
abeaux@paulweiss.com

*Attorneys for Defendants Oaktree Value Opportunities Fund,
L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree
Capital Management, L.P., Oaktree Opportunities Fund IX
Delaware, L.P., Oaktree OBC Holdings LLC, Oaktree Dry Bulk
Holdings LLC, Renée Kemp, Rajath Shourie, and Emily
Stephens*

17

**SEWARD & KISSEL LLP**
Bruce G. Paulsen
Jeffrey M. Dine
Michael B. Weitman
Julia K. Tebor
Bailey A. Smith

One Battery Park Plaza
New York, NY 10004
Tel. (212) 574-1200
Fax (212) 480-8421
paulsen@sewkis.com
dine@sewkis.com
weitman@sewkis.com
tebor@sewkis.com
smithb@sewkis.com

*Attorneys for Defendants Star Synergy LLC, Star Omas LLC,
Bluesea Invest and Holding Ltd., Oceanbulk Carriers LLC,
Millennia Limited Liability Company, Millennia Holdings LLC,
Mirabel Shipholding & Invest Limited, Mirach Shipping
Company Limited, Heron Ventures Ltd., Petros Pappas, Milena
Maria Pappas, Tom Softeland, Spyros Capralos, Koert Erhardt,
Stelios Zavvos, and nominal defendant Star Bulk Carriers
Corporation*

**WILLKIE FARR & GALLAGHER LLP**
Tariq Mundiya
Matthew W. Edwards

787 Seventh Avenue
New York, NY 10019
Tel. (212) 728-8000
Fax (212) 728-8111
tmundiya@willkie.com
medwards@willkie.com

*Attorneys for Defendants Monarch Alternative Capital LP,
Monarch Alternative Solutions Master Fund Limited, Monarch
Capital Master Partners II-A L.P., Monarch Capital Master
Partner II L.P., Monarch Debt Recovery Master Fund Limited,
Monarch Opportunities Master Fund Limited, P Monarch
Recovery Limited, and Roger Schmitz*

18